UNITED STATES v. HEATON et al.

(Circuit Court of Appeals, Third Circuit. February 17, 1904.)

No. 39.

1. UNITED STATES—ACTION ON BOND OF CONTRACTOR—RIGHT OF PRIORITY IN FUND PAID IN BY SURETY.

Rev. St. §§ 3466–3468 [U. S. Comp. St. 1901, p. 2314], which provides that debts due the United States shall have priority in the administration of the estates of insolvents, and that a surety who pays the debt shall be subrogated to such right of priority, do not give the United States such right of priority in a fund paid into court by the surety on the bond of a contractor for government work in discharge of the obligation of the bond, which under the statute and its terms secures the claims of other creditors of the insolvent contractor as well as that of the United States, and in the absence of statutory provision such right of priority does not exist.

2. SAME—DISTRIBUTION OF FUND.

The fact that the United States first commenced an action on the bond does not give it a right to priority, and, the fund having been paid into

court, the right of the United States therein under the statute may properly be determined by the court as against other creditors brought in without objection, although the action is one at law.

3. SURETY—RIGHT TO ALLOWANCE OF COUNSEL FEES—PAYMENT OF MONEY INTO COURT.

The surety on the bond of a contractor, who when sued thereon pays into court the amount of the penal obligation of the bond, and is thereupon discharged from further liability, is not entitled to the allowance of counsel fees from the fund, which is insufficient to pay the claims of creditors of the principal against it.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 124 Fed. 699.

James B. Holland and J. Whitaker Thompson, for plaintiff in error. Samuel Galt Birnie and F. B. Bracken, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. An action was brought by the United States against Edward Heaton and the American Bonding & Trust Company of Baltimore City, upon a bond of the defendants in the penal sum of $8,000, conditioned for the performance by Heaton of a contract to install a system of electric light wiring in the post office building in the city of Philadelphia, and also for the prompt payment by him of all persons supplying him labor or materials in the prosecution of the work provided for in the contract. Heaton did not complete the work, and the United States in consequence paid the sum of $4,537 in excess of the contract price to have it completed. The bonding and trust company accepted service of process and appeared by counsel. As to Heaton, the summons was returned "Not found." He is insolvent. The statement of plaintiff's claim, from which it appears that the suit was brought to recover the sum of $4,537 above mentioned, with interest, was filed upon June 12, 1902; and thereafter, before plea pleaded, the bonding and trust company filed a petition setting forth, inter alia, that several persons and firms named in the petition had made demand upon the petitioner for payment by it of their respective claims for materials furnished to the said Edward Heaton in the prosecution of the said work of installing a system of electric light wiring; that these demands were made upon it as surety in this bond, by virtue of its provision for the payment of all persons supplying labor or materials as aforesaid; that these claimants threatened suit against the petitioner; and that it could not make payment to them and to the United States to the extent of their several demands without paying a sum largely in excess of its liability. It offered to pay the penal sum of the bond into court, and thereupon prayed the court to cause distribution of said sum of $8,000 to be made among the plaintiff and all other rightful claimants thereto, etc. Upon consideration of this petition, the Circuit Court "ordered that the petitioner be permitted to pay into this court the sum of eight thousand dollars, pursuant to the prayer of said petitioner, and that Albert B. Weimer, Esq., be, and is hereby, appointed auditor to hear proof, upon due and proper notice, of all claims

as against said fund which may be presented herein by the said persons named in the foregoing petition as claimants under the bond in suit, and to make report to this court of his findings as to the respective amounts of said claims, and as to the proportion of said sum of $8,000 which should be paid to each of said claimants, including the plaintiff herein; and the said auditor is hereby directed to notify each of the said claimants named in the said petition of this proceeding, and of the time and place when he will hear proof of their claims; and it is further ordered that upon the payment of said sum of $8,000 into court the said petitioner shall be forever thereby released from any further liability as surety on the said bond."

No objection was made nor exception taken by the plaintiff in error, or by any other party in interest, to this order. In pursuance of it the $8,000 was paid into court, and the proceedings contemplated by it ensued. The several claimants, including the United States, presented their claims before the auditor, who, after hearing and consideration, reported the allowance out of the fund of the expenses and costs and a counsel fee to the bonding and trust company of $200, and the balance he distributed to the United States and to the several other claimants pro rata. To this report the plaintiff in error excepted; but the court below overruled its exceptions, and decreed distribution of the fund in accordance with the schedule submitted by the auditor. To that decree this writ of error is directed.

As stated in their brief, the contentions of counsel on behalf of the United States are:

"First, that the United States is entitled to priority and payment in full of its claim, with interest, by reason of its having first brought suit against the defendant on the bond given by the defendant company as surety for Edward Heaton; second, that the United States is entitled to priority and payment in full of its claim, with interest, under sections 3466, 3467, and 3468 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 2314]; third, that the United States is not liable for counsel fees and costs in this proceeding, and that the award to the United States should not be diminished by such payment."

The right of priority affirmed by the first and second of these propositions is to priority of payment from a fund paid into court by the surety in a bond executed under and in conformity with an act of Congress requiring certain contractors with the United States to execute the usual penal bond, with sureties, "with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; * * * upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution: provided, that such action and its prosecution shall involve the United States in no expense." Act Aug. 13, 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]. That this additional obligation was prescribed for the benefit of the persons supplying labor and materials appears from the title of the act, and also from its provision authorizing them to sue for

their own use, and it contains nothing to suggest that it was intended that their claims under such bonds were to be secondary or subordinate to those of the government. But it is argued that the right of priority asserted in this case was vested in the United States by the much earlier enactments, which are embodied in sections 3466, 3467, and 3468 of the Revised Statutes, as follows:

"Sec. 3466. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.

"Sec. 3467. Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

"Sec. 3468. Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

Undoubtedly, the first of these sections does establish priority in the United States whenever the person indebted is insolvent; but the debtor with whom this controversy is concerned is not the insolvent Heaton, but is the bonding and trust company, and, as that company is admittedly solvent, section 3466 has no application. It is argued, however, that it appears, upon "reading the three sections together, that the intention of Congress was that the United States should be entitled to the same priority against the surety as against the principal." The sufficient answer to this argument is that no such intention was expressed. As was said by the learned judge of the Circuit Court:

"The United States has no priority against a surety, for the reason that no statute has given it such a privileged position, while it has priority against an insolvent principal for the analogous reason that Congress has seen fit so to enact. The right of a surety, after he has paid the money due upon his bond to the United States, to be preferred in the distribution of his insolvent principal's estate, does not depend at all upon the answer to the question whether the United States has previously had priority against the surety, but rests solely upon the language of section 3468, which expresses the legislative will upon the subject. It is this section that is the source of the surety's right, and I think its true construction gives priority for so much, and no more, of the government's claim as the surety may have been obliged to pay by legal proceedings, or may have paid voluntarily, in discharge of his obligation upon the bond."

128 F.—27

The cases of suits upon official .bonds, which have been cited in support of the proposition that the United States is entitled to priority by reason of its having first brought suit, are not pertinent. The bond sued on in this case is not an official bond. American Surety Co. v: Lawrenceville Cement Co. (C. C.) 96 Fed. 25. Nor is there any force in the suggestion that the court below, though sitting as a court of law, determined the rights of these parties upon equitable principles. The question was as to the legality of the claim of one of them to preferential payment out of a fund paid into court by the surety in a bond, and the validity of that claim did not depend upon the right application of any principle of equity, but upon the correct construction of the statute under which the bond was given, and of the other statutory provisions to which reference has been made. Therefore the issue was one which a strictly common-law court was competent to try, and the mode of trial which was adopted is not open to question, for all parties voluntarily submitted to it.

We think the allowance of a counsel fee to the bonding and trust company was erroneous. That company was not a mere stakeholder. It was a party, and it was for that reason that it required counsel. It is plain that his services up to the time the money was paid into court were rendered exclusively for its benefit, and with the subsequent proceedings it was not concerned. The resulting indebtedness, therefore, was absolutely its own, and should not have been charged against the fund. This ruling, however, can avail none of the claimants other than the United States, for no other of them is before this court as a plaintiff in error.

The cause will be remanded to the Circuit Court, with direction to disallow, as against the United States, the claim of the American Bonding & Trust Company of Baltimore City for a counsel fee, and the decree of that court, when amended in conformity with this direction, will stand affirmed.