UNITED STATES, to Use of GENERAL ELECTRIC CO., v. SCHOFIELD CO. et al.

(Circuit Court, E. D. Pennsylvania. October 13, 1910.)

No. 1,034.

1. UNITED STATES (§ 67*)—PUBLIC WORKS—CONTRACTORS' BONDS—SUBCONTRACTORS—RIGHT TO SUE—STATUTES—APPLICATION.

The United States contracted with the S. Company for the construction of a dry dock in Pennsylvania, and the S. Company let a subcontract for certain of the work to the use plaintiff May 10, 1903. Defendant surety company became surety for the S. Company under a statutory bond to the United States May 24, 1904; the contract being subsequently modified with the surety's consent by supplemental agreements after February 24, 1905, and such supplemental contracts providing that the original contract should remain in force in the same manner and with like effect as though the modifications had been provided for and made part of the original contract. *Held*, that the subcontractor's right to sue on the bond was governed by Act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), authorizing a subcontractor to sue on a bond exacted of a contractor with the United States for public work, without limitation as to time or priority of lien by the United States on the fund recovered, and not by Act Cong. Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), amending the act of 1894, and providing that no suit can be brought on such a bond until after completion and final settlement of the contract, nor until six months have elapsed during which the United States alone can sue, and requiring that if no suit is brought by the United States the subcontractor may then sue within the succeeding six months only.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 67.*]

2. COURTS (§ 274*)—PUBLIC WORK—BONDS—ACTION—VENUE.

Act Cong. Aug. 13, 1894, c. 282, 28 Stat. 279 (U. S. Comp. St. 1901, p. 2315), authorizing suits by contractors for public work on the contrac-

tor's bond given to the United States, declares (section 5) that any surety company, surety on such a bond, may be sued in any court of the United States having jurisdiction of actions or suits on such bonds in the district in which the bond was made or guaranteed, or in the district in which the principal office of the surety company is located, and for the purposes of the act the bond should be treated as made or guaranteed in the district in which the office is located, to which it is returnable, or in which it is filed, or in the district in which the principal in the bond resided when it was made. *Held*, that where a contractor's bond for the construction of a dry dock at the navy yard at League Island, Pennsylvania, was executed in New York, was returnable to and filed in Washington, and the principal in the bond was a New York corporation, while the principal office of the surety was in the Middle district of Pennsylvania, a suit on the bond was improperly instituted in the Eastern district of Pennsylvania.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 274.*],

3. PLEADING (§§ 151, 155*)—NATURE AND EFFECT—"AFFIDAVIT OF DEFENSE."

An affidavit of defense peculiar to the practice in Pennsylvania is not a pleading, nor is it equivalent to an answer under the Code practice, or to a plea under the practice at common law; its sole function being to prevent a summary judgment, and hence need not set up the defendant's whole case, but only enough to prevent the entry of a summary judgment, after which the parties may frame their issues for trial as they see fit.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 302, 309–311, 313, 314; Dec. Dig. §§ 151, 155.*]

4. COURTS (§ 276*) — CONTRACT WITH UNITED STATES — ACTION ON BOND — VENUE—WAIVER.

Where an action by a subcontractor on the bond of the contractor for public improvement was brought in the wrong district, but the surety filed an affidavit of defense containing defenses to the merits, the objection was waived.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 276.*]

5. BANKRUPTCY (§ 363*)—BANKRUPTCY PROCEEDINGS—ACTIONS.

Where a subcontractor for a federal improvement was entitled to sue the contractor's surety on the statutory bond required, such action was not barred by the fact that on the contractor becoming bankrupt the subcontractor had filed its claim against the contractor's estate in bankruptcy; but the remedies, being separate and against separate persons, might be pursued simultaneously.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 363.*]

Suit by the United States, to the use of the General Electric Company, against the Schofield Company and the Title Guaranty & Surety Company. Motion for judgment for want of a sufficient affidavit of defense. Granted in part.

H. B. Gill, for plaintiff.

John W. Graham, Jr., Adrien T. Kiernan, and Alex. Simpson, Jr., for defendant Title Guaranty & Surety Co.

J. B. McPHERSON, District Judge. This is a suit by a subcontractor upon a bond given to the United States by the principal contractor to insure the faithful performance of certain work. It is brought in the Eastern district of Pennsylvania against both principal and surety, but the surety alone has made defense. Judgment is resisted on three grounds; one being that the suit has been pre-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

maturely brought, and another that in any event it has been brought in the wrong district. The facts upon which these two defenses rest are as follows:

The original contract was entered into between the United States and the Schofield Company on March 9, 1903. The subcontract with the use plaintiff, the General Electric Company, was made on May 10, 1903. The Title Guaranty & Surety Company became surety on May 24, 1904, taking the place of another company whose bond had become unsatisfactory. The contract had been previously modified by supplemental agreements dated December 14, 1903, and March 1, 1904, and the title company's obligation covered the contracts thus modified. Afterwards, on June 21, 1904, another supplemental agreement was made to which the title company consented. Up to this point the right of action upon the contract, and the consequences to follow from such a suit, were undoubtedly governed by Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523); no other act having then been passed. Under this statute the right of the subcontractor to sue upon the bond was not limited in time or by any other express condition, and the United States had no priority of lien upon the fund recovered. United States, to Use, etc., v. Fidelity, etc., Co. (C. C.) 171 Fed. 247, approved in Fidelity, etc., Co. v. U. S. (C. C. A.) 178 Fed. 692; American Surety Company v. Cement Co. (C. C.) 96 Fed. 25; U. S. v. Heaton, 128 Fed. 414, 63 C. C. A. 156.

On February 24, 1905, Congress passed another act (Act Feb. 24, 1905, c. 778, 33 Stat. 811 [U. S. Comp. St. Supp. 1909, p. 948]) on this subject which makes important changes in the rights of a subcontractor. Under this statute no suit can be brought on the bond by any one until after the completion and final settlement of the contract. During six months thereafter the United States alone can sue. If no such suit is brought, a subcontractor may sue during the six months immediately succeeding; but he may not sue at all after the expiration of one year from the completion of the work. Priority is also given to the claim of the United States. After the date of this act, three additional supplemental contracts were made between the United States and the Schofield Company, to all of which the surety agreed.

The present suit was brought July 5, 1910, and the parties agree that all the work done and the materials furnished by the General Electric Company were done and furnished after the act of 1905 was passed. Is the suit to be governed by the act of 1894 or by the act of 1905? As it seems to me, the answer should be—the act of 1894. It is undoubtedly true that some provisions of the act of 1905 are concerned with the remedy alone, and, if it were clear that Congress intended these provisions to apply to suits or to contracts then pending, the courts would be bound to obey the act as far as possible. But there is one provision at least which seems to be not a mere matter of procedure, but of substantial importance, namely, the clause that gives to the United States priority over a subcontractor. Under the act of 1894 the General Electric Company entered into this subcon-

tract and thereby acquired the right to sue without special limitation or condition, and the right also to share in the fund recovered proportionately with all other claimants, including the United States. This right thus to share was valuable, and upon well-established principles it is not to be presumed that Congress intended to disturb it, although the power so to do may exist. Indeed, the contrary presumption is to be applied. In the words of the Supreme Court in U. S. Fidelity Co. v. Struthers Co., 209 U. S. 314, 28 Sup. Ct. 539 (52 L. Ed. 804):

"There are certain principles which have been adhered to with great strictness by the courts in relation to the construction of statutes as to whether they are or are not retroactive in their effect. The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other. It ought not to receive such a construction unless the words used are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied. Dash v. Van Kleeck, 7 Johns. 499 [5 Am. Dec. 291]; Jackson v. Van Zandt, 12 Johns. 169; United States v. Heth, 3 Cranch, 399, 414 [2 L. Ed. 479]; Southwestern Coal Co. v. McBride, 185 U. S. 499, 503 [22 Sup. Ct. 763, 46 L. Ed. 1010]; United States v. American Sugar Co., 202 U. S. 563, 577 [26 Sup. Ct. 717, 50 L. Ed. 1149]."

Applying this rule of construction, the court went on to decide that the act of 1905 does not show an intention on the part of Congress to affect contracts made before its passage, and that it is not retrospective in any respect.

After February 24, 1905, the Schofield Company and the use plaintiff with the consent of the surety entered into certain supplemental agreements; but these were not new and independent transactions. They were parts and incidents of the original contract, and should be regarded as matters omitted therefrom and afterwards supplied. They all recognized the desirability of certain changes; declared that they do not in any manner or degree affect, modify, alter, omit, or vitiate any provision or requirement of the original contract except as specifically stated; and expressly provided:

"That nothing contained or stated in this agreement, and nothing done or required under its terms, shall operate or be held to in any manner release, reduce, or otherwise affect, the bond attached to the aforesaid contract, but the same shall be and remain in full force and virtue in the same manner and with like effect as though the modifications herein provided for had been included in and made a part of the aforesaid contract at the time of the execution of the aforesaid seal," etc.

Assuming this conclusion to be correct, has the Circuit Court for the Eastern District of Pennsylvania lawfully acquired jurisdiction of the person of the surety? The statute governing this question was passed on August 13, 1894 (Act Aug. 13, 1894, c. 282, 28 Stat. 279 [U. S. Comp. St. 1901, p. 2315]), the same day on which the other act already referred to was approved. It provides:

"Sec. 5. That any surety company doing business under the provisions of this act may be sued in respect thereof in any court of the United States which has now or hereafter may have jurisdiction of actions or suits upon such recognizance, stipulation, bond, or undertaking, in the district in which said recognizance, stipulation, bond, or undertaking was made or guaranteed, or in the district in which the principal office of such company is located.

And for the purposes of this act such recognizance, stipulation, bond or undertaking shall be treated as made or guaranteed in the district in which the office is located to which it is returnable or in which it is filed, or in the district in which the principal in such recognizance, stipulation, bond, or undertaking resided when it was made or guaranteed."

The Eastern district of Pennsylvania fulfills none of these conditions. The bond was executed in New York; it was returnable and was filed in Washington; the Schofield Company is a New York corporation; and the principal office of the surety company is in the Middle district of Pennsylvania. Indeed, the use plaintiff concedes that the suit cannot be maintained in this district unless the surety company has waived its right to be sued elsewhere.

The act of waiver relied on for this purpose is to be found in the affidavit of defense. No appearance, general or special, was filed; but the surety company was served with a copy of the statement of claim, and shortly afterwards filed the affidavit in question, which contains the defenses already referred to and two others, both bearing upon the merits of the claim. Of these one is quoted hereafter. It sets up as a bar the pendency of certain bankruptcy proceedings in the Southern district of New York, where the estate of the Schofield Company is being administered; and the other sets up certain credits or counterclaims which in any event—so it is contended—must be allowed by the plaintiff. It is the setting up of these two defenses relating to the merits that is relied upon to support the waiver in question. In my opinion the point is decided in favor of the plaintiff by Western Loan Co. v. Butte, etc., Co., 210 U. S. 369, 28 Sup. Ct. 721 (52 L. Ed. 1101). There, as here, the suit was brought in the wrong district; but the Supreme Court decided that the defendant had waived this mistake by filing a demurrer in which it was alleged:

"(1) That the court has no jurisdiction of the subject of the action; (2) that the court has no jurisdiction of the person of the defendant; (3) that said complaint does not state facts sufficient to constitute a cause of action against this defendant; (4) that the complaint is uncertain; (5) that the complaint is unintelligible."

It was held that by thus setting up defenses to the complaint (equivalent to the Pennsylvania statement of claim) the objection to the jurisdiction had been waived. And this was decided, as will be observed, although the defenses were all embraced in one pleading and were therefore presented simultaneously. Evidently it would have been quite as easy to hold that the defect in jurisdiction had not only not been waived, but had been expressly and continuously insisted upon. The case illustrates the natural disfavor with which a court regards what is usually a purely dilatory objection. The parties have been brought before a tribunal that has complete jurisdiction over the subject-matter, and although the defendant, if he makes the proper objection, may insist upon his privilege to have the dispute heard in another district, he must act with great promptness, and (speaking generally) must confine himself to this particular objection. One court with the right to hear the subject-matter is presumed to be as competent as another, and a defendant can fairly ask no more than

to have his cause heard by some competent tribunal. The facts here are essentially similar to the facts in the case of the Western Loan Company. That the defenses are set up, not by demurrer, but by an affidavit of defense, makes, I think, no important difference. Such an affidavit appears to be peculiar to the practice in Pennsylvania. It is not a pleading; it is not the equivalent of an answer under the Code practice, or of a plea under the practice at common law. Its function is to prevent a summary judgment, and after it has performed this office it drops out of sight. It need not set up a defendant's whole case; it need do no more than show one sufficient reason why summary judgment should not be entered. If required to examine it, the court must do so and decide whether, if true, it presents a defense that should be sustained in whole or in part; and, if such a defense be set up, summary judgment must be refused, and the parties must be left to frame their issues for trial as they may see fit. The affidavit may attack the plaintiff's statement of claim for almost any reason, and may set up almost any other defense that may be available. I can see no difference in substantial effect between the demurrer in the case referred to and the affidavit now under consideration. In both the lack of jurisdiction over the defendant's person is presented, and both add other defenses that relate to the merits of the controversy. If the demurrer was a waiver in the one case, I think it must be held that the affidavit is a waiver in the other.

It remains to consider whether the pendency of certain proceedings in the Southern district of New York is a bar to the present action. The nature of these proceedings is thus averred in the affidavit, and for present purposes these averments must be taken as true:

"And deponent further avers that the said Schofield Company prior to the bringing of this suit became insolvent, whereupon proceedings in bankruptcy were duly instituted against it, in the District Court of the United States for the Southern District of New York, which proceedings resulted in an adjudication of bankruptcy and the appointment of one Seymour P. Thomas as trustee in bankruptcy. And thereafter upon petition duly presented and considered, by the Honorable George C. Holt, District Judge of the United States, sitting in said bankruptcy court, an order or decree was duly made, which directed as follows:

" 'Ordered that Seymour P. Thomas, the trustee of the Schofield Company, be and he hereby is directed to hold all sums which he has received or may hereafter receive from the United States of America upon the contract between the Schofield Company and the United States for the construction of the dry dock at the Navy Yard, League Island, Pennsylvania, separate and apart from the other assets of the estate in bankruptcy, herein, and to pay therefrom in the first instance, the just claims of the United States, and thereafter the claims of those who have furnished labor and materials in the prosecution of the work provided for in said contract; and it is further

" 'Ordered that the balance of such moneys, if any, thereafter remaining in the hands of said trustee, and the plant which the Schofield Company owned or had upon the work under the contract aforesaid and all moneys heretofore derived from the sale of such plant be held by such trustee until the further order of this court; and it is further

" 'Ordered that it be referred to John S. Sheppard, Jr., counselor and attorney at law, of —— in the —— as special master, to take proof and report to this court, with all convenient speed, the following matters:

" '(1) A statement of the moneys heretofore received and hereafter to be received by the trustee in bankruptcy of the Schofield Company from the United States on the contract aforesaid;

" '(2) The claims of the United States and the names, addresses, and amount of the claims of those who furnished labor and material in the prosecution of the work under the said contract between the said Schofield Company and the United States;

" '(3) The claims, in detail, of the Title Guaranty & Surety Company for all loss, costs, damages, charges, and expenses whatever which it may have sustained or incurred by reason of its suretyship upon the bond aforesaid, from the acts, defaults, or neglect of the Schofield Company in and about said contract; and

" '(4) His opinion as to the disposition which should be made of the plant (and the moneys arising from such sales thereof as have been heretofore made) which the Schofield Company owned or had upon the work under the contract aforesaid and as to the claims against the balance of the funds in the hands of the said trustee after the payment of all just claims of the United States and those who have furnished labor and materials in the prosecution of the work under the contract aforesaid. And it is further

" 'Ordered that due notice be given to all claimants to present claims and of the hearing before the referee.       Geo. V. Holt, J.'

"Thereafter the use plaintiff in this case was given notice of said proceeding, and duly appeared before the said John S. Sheppard, Jr., as special master, and submitted to him the proofs of its claim, being the same claim as that sued for in the present case, and then and there submitted its claim to the jurisdiction and judgment of said court, and became legally bound to abide by the judgment of said court in regard thereto. Such submission has never been revoked by use plaintiff, and remains in full force and effect. The proceedings before said special master are still pending and undetermined, and use plaintiffs can recover at most such sum, if any, as shall be found due to it by said court on the report of said special master, and should not be permitted to further maintain this suit until the said court shall determine what sum, if any, is due to it."

I am unable to see how this proceeding, whatever its nature really may be, can be a bar to the present suit. The use plaintiff has a right of action on the bond against the surety company, and it has also a claim against the bankrupt estate of the Schofield Company. These are separate remedies against separate persons and may be pursued simultaneously. So far as appears, the surety company is not taking part in the proceeding before the court in New York. The affidavit is silent upon this subject. But even if it has appeared for some purpose before that tribunal and is making some claim or taking some kind of action there, I do not perceive how the bankruptcy court, sitting to administer the estate of the Schofield Company, can adjudicate a dispute between the electric company and the surety company so as to render a final judgment against one or the other. One purpose at least of this suit is to enable the electric company to liquidate its claim under the bond against the surety company, and this, in my opinion, it has a right to do.

Judgment may be entered for so much of the claim as is not covered by the counterclaims set up in the affidavit; the amount to be liquidated by the clerk. The use plaintiff has leave to proceed to trial for the balance.