UNITED STATES ex rel. JAMES B. CLOW & SONS et al. v. ILLINOIS SURETY CO. et al.

(District Court, N. D. Illinois, E. D. April 9, 1912.)

No. 30,486.

UNITED STATES (§ 67*)—PUBLIC IMPROVEMENTS—CONTRACTOR'S BOND—ACCRUAL OF CAUSE OF ACTION.

Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), which provides that, if no suit is brought on a federal contractor's bond of the United States within six months from the completion and final settlement of the contract, any creditors for whose benefit the bond was taken may sue thereon in the name of the United States, provided the suit shall not be commenced until after the complete performance of the contract and final settlement thereof, gives to a subcontractor of a contractor of public work the right to sue six months after the work is completed and settled for, without regard to guaranties or stipulations by the contractor for repairs, and the reservation by the government of a specified sum for one year after the completion and acceptance of the work.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

Proceeding by the United States, on the relation of James B. Clow & Sons and others, against the Illinois Surety Company and another. Demurrer to complaint overruled.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wyeth & Smith, for plaintiff.

Knapp & Campbell, Holt, Wheeler & Sidley, and Ralph E. Church, for intervening subcontractors.

Hopkins, Peffers & Hopkins, for defendant Illinois Surety Co.

W. N. Horner, for defendant Schott.

SANBORN, District Judge. This is an action at law on defendants' bond dated August 3, 1908, given to secure performance of a contract between Schott and the United States, for putting a heating system into the Naval Training Station near North Chicago, Ill., and to make prompt payment for labor and materials supplied by subcontractors. It is brought under Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. Stat. Supp. 1909, p. 948), the material provisions of which are stated in Stitzer v. United States, 182 Fed. 513, 105 C. C. A. 51. See, also, United States v. Winkler (C. C.) 162 Fed. 397. The relator, Clow & Sons, a corporation, and others, were subcontractors of Schott. Defendant surety demurred on the ground that the suit is prematurely brought before any cause of action arose.

It is provided by the statute that any subcontractor furnishing labor or materials for any public building or work, or for repairs on any public building or public work, may intervene in any suit by the United States on the contractor's bond, and have his rights adjudicated, and judgment rendered thereon, subject to any priority of the United States. If no suit is brought by the United States within six months from the completion and final settlement of the contract, the subcontractor may sue on the bond in the name of the United States, for his use and benefit, against the contractor and his sureties, and prosecute the action to final judgment and execution; but such suit is not to be commenced until after complete performance of the contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of the contract.

By the declaration it is alleged that the contract was made July 30, 1908, and performance and final settlement February 11, 1911; that 5 per centum of the contract price was reserved to the United States, to be paid at the expiration of a year from completion and acceptance, Schott agreeing in the contract that, should he fail to make necessary repairs on the work, the same might be done by the government at his expense. No suit was brought by the government, so the intervention clause of the statute does not apply. Seven months after "performance * * * and completion and final settlement" this suit was brought, being about the middle of the one year period for holding the 5 per cent. reservation. Defendants now claim that complete performance and final settlement had not been made when suit was brought. Their contention is that no final settlement, nor even full performance, could be made until February 11, 1912, upon which the government would have until August 11, 1912, to bring suit, and in default thereof subcontractors might then sue up to February 11, 1913. Certain provisions of the contract are re-

ferred to as bearing on the question of construction presented, which follow:

"This contract, of two parts, made and concluded this 30th day of July, 1908, by and between W. H. Schott, a citizen of the state of Illinois, having an office at No. 125 Monroe street, Chicago, Illinois, party of the first part, and the United States, represented by the Secretary of the Navy, party of the second part, witnesseth:

"That for and in consideration of the payments to be made as hereinafter specified the party of the first part, for himself and his heirs, executors and administrators, hereby covenants and agrees to and with the party of the second part as follows, that is to say:

"First. The party of the first part will, at his own risk and expense, construct, provide, and install, at the U. S. Naval Training Station, Great Lakes, North Chicago, Illinois, heating and electrical distribution mains and concrete tunnel, furnishing all the necessary materials, labor, tools and appliances therefor, and will complete the same in all respects within six (6) calendar months from the date of this contract, all in conformity with the plans and specifications for said work, with the modifications thereof contemplated by paragraphs d, e, and g, of the addenda to said specifications; which said plans and specifications, including addenda to the latter, hereto appended, shall be deemed and taken as forming a part of this contract, with the like operation and effect as if they were incorporated herein."

Specifications material to be considered are contained in the contract as follows:

"39. Payments.—Payments will be made by the Navy Department monthly upon public bills, based on monthly estimates and the schedule of unit prices above described, certified by the officer in charge and approved by the Commandant and the Chief of the Bureau of Navigation. Ten per cent. of the amount of each monthly estimate will be withheld until the completion and acceptance of the work. One-half the amount of the reservations thus withheld will then be paid upon public bills certified and approved as above, the remaining one-half of said reservations to be so paid at the expiration of one year from the time of the completion and acceptance of the work, subject, however, to the provisions of paragraph 56 of these specifications.

"40. All warrants for payments under the contract shall be made payable to the contractor or his order at such navy pay office as the party of the second part may designate. Before final payment under the contract, and as a condition precedent to such payment, the contractor shall execute and deliver to the party of the second part a full and final release to the United States, in such tenor and form as shall be approved by the Secretary of the Navy, of all claims of any kind or description under or by virtue of the contract.

"41. The monthly payments on the work during its progress shall not be considered or understood to be a final acceptance of the work in question, and any work or material which is of an inferior quality, or proves unsatisfactory in any respect, at any time, shall be rejected and replaced by the contractor to the satisfaction of the officer in charge of the work, notwithstanding that payments have been made upon such work or material."

"45. Guaranty.—The contractor shall guarantee all work and materials and keep same in perfect repair and condition for a period of one year after the completion and acceptance, unless hereinafter, or in the contract, otherwise stipulated. Defects of any kind appearing during that period must be made good by the contractor at his expense when called upon to do so, and all to the entire satisfaction of the Commandant. All work must be in perfect condition at the end of the period above named."

"56. Reservation.—One-half of the 10 per cent. reservation hereinbefore provided to be made on all payments will be held for a period of one year after the completion and acceptance of the work. And the contractor agrees that should he fail to make necessary repairs the same may be done by the Government at his expense."

It will be seen the contract uses the terms "completion and acceptance of the work" as determining the time of payment of the one-half of the ten per cent. reservation from monthly payments, while the language of the statute in fixing time of suit is, "Complete performance of said contract and final settlement thereof." Is the statute to be construed to mean the time when the heating plant is completed and turned over to the naval officers, or the time when every contract stipulation is finally performed? For instance, suppose the Secretary of the Navy inserts a provision that the contractor shall make repairs for ten years instead of one, must the government wait ten years, and the subcontractor nearly eleven, before bringing suit? Or does the statute merely refer to the time of completion and finally ascertaining the amount due?

In construing the statute referred to liberal rules have been applied. It was held in United States ex rel. Hill v. American Surety Co., 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437, that the Act of 1894, of which that of 1905 is an amendment, extends to a subcontractor of a subcontractor; also, that the liability of a surety corporation, which furnishes indemnity for a money premium, is not stricti juris. The same construction was given the Act of 1905 in Mankin v. United States, 215 U. S. 533, 30 Sup. Ct. 174, 54 L. Ed. 315, notwithstanding some language inconsistent with such construction. And in Title Guaranty Co. v. Crane Co., 219 U. S. 24, 31 Sup. Ct. 140, 55 L. Ed. 72, it was decided that a ship is within the statute as a public work. Another principle of construction is applied in the Hill Case, which seems applicable here. That is that "a thing which is within the intention of the makers of the statute is as much within the statute as if it were within the letter." I think the true intent and purpose of the act of 1905 are to give an action to the government as soon as the public work is completed and settled for, without regard to guaranties or stipulations for repairs, and to the subcontractor six months later. The statute and the bond itself secure "prompt payment," which they could not do if no suit could be brought until all collateral covenants were performed.

Demurrer overruled.