(133 So. 261)

**NEW YORK INDEMNITY CO. v. NIVEN et al.**

6 Div. 626.

Supreme Court of Alabama.

March 12, 1931.

Rehearing Denied April 9, 1931.

L. H. Ellis, of Columbiana, and Fort, Beddow & Ray, Cabaniss, Johnson, Cocke & Cabaniss, and Lucian D. Gardner, Jr., all of Birmingham, for appellees.

Martin, Thompson & McWhorter, of Birmingham, for appellant.

**THOMAS, J.**

The suit is upon a road contractor's bond. There were several interventions: (1) By one who furnished board to an employee; (2) for oil and gasoline used in the construction of the project; (3) by those who claim for work and labor performed during that construction; (4) for rent and repairs on a machine while so employed; (5) for repairs on a shovel; (6) for rent of a tractor; (7) for claim for chert purchased and hauled; and (8) for charges for patchwork in connection with the construction of said project.

■ The effect of our statutes, under recent decisions, is declared in Union Indemnity Co. v. State, for Use of Armstrong & Bro. Co., 218 Ala. 132, 118 So. 148; Pettus v. Dudley Bar Co., 218 Ala. 163, 118 So. 153; Jefferson County v. Union Indemnity Co., 218 Ala. 632, 119 So. 837; Fidelity & Deposit Co. v. Rainer, 220 Ala. 263, 125 So. 55; Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876; State for Use of Wadsworth v. Southern Surety Co., 221 Ala. 113, 127 So. 805, 70 A. L. R. 296. There was no misjoinder of action, and the complaint sufficiently informed defendant of the several claims and not subject to grounds of demurrer assigned.

■ The statutes come to us somewhat modified from the federal statutes and are within the persuasive influence of construction given theretofore by federal courts in respects applicable. State for Use of Wadsworth v. Southern Surety Co., supra; Barnewell v. Murrell, 108 Ala. 366, 18 So. 831; Harrington v. State ex rel. Van Hayes, 200 Ala. 480, 76 So. 422; Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377; Alabama Fuel & Iron Co. v. Denson, 208 Ala. 339, 94 So. 311; Ex parte Sloss-Sheffield S. & I. Co., 207 Ala. 219, 92 So. 458; Loveman, Joseph & Loeb v. McQueen, 203 Ala. 280, 82 So. 530; Steagall v. Sloss-Sheffield S. & I. Co., 205 Ala. 100, 87 So. 787; O'Byrnes v. State, 51 Ala. 25, 27; Cathcart v. Robinson, 5 Pet. 264, 280, 8 L. Ed. 120.

The penalty of the bond in question was in the amount of $4,557.50, and its conditions are:

"* * * in the event the said Marble City Construction Company as such contractor shall faithfully and promptly perform said contract and all the conditions and requirements thereof, then this obligation shall be null and void and of no effect, otherwise to remain and be in full force and effect.

"Provided further, (1) that upon the failure of the said Marble City Construction Co. to promptly and efficiently prosecute said work, in any respect, in accordance with the contract, the above bound New York Indemnity Company, as sureties, shall take charge of said work and complete the contract at their own expense, pursuant to its terms, receiving, however, any balance of the funds in the hands of said State due under said contract. (2) Said sureties, if they so elect, by written direction given to the State Highway Commission authorize the State Highway Commission to advertise for bids to complete the said contract at the expense of said sureties, and such sureties hereby agree and bind themselves to pay the expense of the completion of such work, (3) *less any funds in the hands of the State remaining due to above bound contractor. * * *"* (Italics and numbers supplied.)

"Upon the completion of said contract pursuant to its terms, if any funds, remain due on said contract, the same shall be paid to said principal or sureties. * * * Principals and sureties agree as a part of this obligation that such contractor shall promptly make payment to all persons supplying him or them with labor, materials, feed stuffs or supplies, in the execution of the work provided for in such contract, as provided for in Section 28 of the Act of the Legislature approved August 23, 1927, and designated as 'The Alabama Highway Code.' " Section 1397 (30), (1328), Code of 1928.

Under the provisions of that bond, upon failure of the original contractor to faithfully perform such contract promptly and do the work agreed and contracted to be done, and make prompt payment, etc., or upon failure to faithfully and promptly perform in respects and in accordance with the contract, the surety had the choice of several alternatives for its protection. It might (1) take charge of said work and complete the contract at its own expense pursuant to the terms of the contract, and receive "any balance of the funds in the hands of the State remaining due under said contract"; or might (2) authorize, in writing, the state highway commission to advertise for bids for the completion of the contract agreeing, in the event the project was completed by the State Highway Commission "at the expense of said sureties," to pay the expense of the completion of such work less any funds in the hands of the state remaining due to the (above) bound contractor, the original contractor; (3) or might fail or refuse to do anything, in which case the state would have the contract completed and the appellant would be liable for the reasonable cost in excess of the contract price. In that event the penalty of the bond would be the maximum recovery of the surety.

The allegations of appellant's plea No. 2 were to the effect and of the procedure outlined by the provisions of the bond and that required by a statute that gave the state priority as to its claims. The question of the right construction of our statute in said respect is raised by the ruling of the trial court sustaining demurrer to plea 2.

■■■ The trial court in rendering a judgment in favor of Niven, in the amount of $300.50, did not prorate such judgment from the total amount of the recovery. The penalty of the bond, as indicated, was $4,557.50; appellant received from the state, for completing the contract, $2,413.03, which amount included the retained percentage in the hands of the state at the time of the default of the contract of $387.74. The sum of the penalty of the bond and the amount received from the state for completing the contract, it is insisted, are the extent of its liability in the premises, *such sum amounting to $6,970.54.* The appellant *in discharging its obligation to the state expended $4,519.49 in completing the contract.* This amount, so expended under its contract and the law that entered therein, when deducted from $6,970.54, leaves (according to the insistence of appellant) available for the payment of claims the sum of only $2,451.05, which should have been accordingly prorated in satisfaction of the total amount of plaintiffs' and claimants' claims allowed. That is to say, the various claimants are entitled to receive a percentage of the total of their respective claims allowed by the court; while, by the judgments rendered in favor of the claimants, Niven was awarded his full claim of $300.50, and in the same ratio to the other claimants.

The question therefore recurs whether, under our statutes and rules, these claims should have been prorated, and what items of expense are included in the proration?

Mr. Justice Hughes of the Supreme Court of the United States announces the following rule, under the federal statute now of force, in the case of Illinois Surety Co. v. United States, Use of J. A. Peeler, etc., 240 U. S. 214, 36 S. Ct. 321, 322, 60 L. Ed. 609, 616:

"It was evidently the purpose of the act of 1905 to remedy the defect in the act of 1894 by assuring to the United States adequate opportunity to enforce its demand against the contractor's surety, and priority with respect to such demand. Mankin v. United States, 215 U. S. 533, 538, 54 L. Ed. 315, 317, 30 S. Ct. 174; United States ex rel. Brown-Ketcham Iron Works v. Robinson, 130 C. C. A. 432, 214 F. 38, 39, 40. Accordingly it was provided that if the United States sued upon the bond, the described creditors should be allowed to intervene, and be made parties to the action, but subject 'to the priority of the claim and judgment of the United States.' And it was only in case the United States did not sue within the specified period that the creditors could bring their action. With this object in view,—to protect the priority of the United States, and at the same time to give a remedy to materialmen and laborers on the contractor's bond and a reasonable time to prosecute it (United States for use of Alexander Bryant Co. v. New York Steam Fitting Co., 235 U. S. 327, 337, 59 L. Ed. 253, 257, 35 S. Ct. 108),—it was natural that the time allowed exclusively for action by the government should begin to run when the contract had been completed, and the government, in its final adjustment and settlement according to established administrative methods, had determined what amount, if any, was due. * * *

"The pivotal words are not 'final payment,' but 'final settlement,' and in view of the significance of the latter term in administrative practice, it is hardly likely that it would have been used had it been intended to denote payment. See United States v. Illinois Surety Co. [D. C.] 195 F. 306, 309; United States use of Chief All Over v. Bailey [D. C.] 207 F. 782, 784; United States ex rel. Brown-Ketcham Iron Works v. Robinson (C. C. A. 2d C.) supra; United States use of Starrett-Fields Co. v. Massachusetts Bonding & Ins. Co. [D. C.] 215 F. 241, 244; United States use of John Davis Co. v. Illinois Surety Co. (C. C. A. 7th C.) 226 F. 653, 662. The word 'settlement,' in connection with public transactions and accounts, has been used from the beginning to describe administrative determination of the amount due."

It may be said in line with this decision that the provisions of section 1397 (30), subd. (e), Code of 1928, are: "That where suit is instituted by any such creditors on the bond of the contractor, *it shall not be commenced until after the complete performance of said contract and final settlement* thereof; and where suit is so instituted by creditor or by creditors, *only one action shall* be brought. and any creditor may file his claim in such action and be made party thereto. *If the recovery on the bond should be inadequate to pay the amounts found to be due to all of said creditors, judgment shall be given to each creditor prorata of the amount of the recovery.*" (Italics supplied.) Gen. Acts 1927, pp. 348, 357. That is, in so enacting, it may be said that our Legislature sought to meet the decision in the Illinois Surety Company Case, supra. However, the federal and our state statutes are not identical as we will later show as to the incorporation of the clause for a priority for state. In United States Fidelity & Guaranty Co. v. United States for Use and Benefit of Struthers Wells Co., 209 U. S. 306, 28 S. Ct. 537, 540, 52 L. Ed. 804, 807, 808, that court said of the statute before (1905) the amendment adding provision for priority in favor of the United States: "It is admitted by the plaintiff in error that the act is not confined to procedure, but deals with substantive rights in some instances, one of which is the provision granting a preference to the United States over all other creditors. In such case counsel admits that the provision must be construed and held to apply to bonds executed

subsequent to the enactment of the statute, and to such bonds alone. Under the statute of 1894 no such preference could be obtained. American Surety Co. v. Lawrenceville Cement Co. (C. C.), 96 F. 25; United States v. Heaton, 63 C. C. A. 156, 128 F. 414."

When the principal in the bond has failed to execute the contract as he has engaged to do, the contract has been annulled by the state for such failure, and the surety called upon under the statute and its contract of suretyship to fulfill the obligation in question; the state has exercised its option of having the work completed within and under the terms of the bond. If the surety has the election to so comply, and causes the completion of the work, has the surety done and undertaken more than what the state would have done in the premises, had the latter actually prosecuted the work to completion through its own or other agencies?

In regard to the repairing of such default in the prosecution of the work, the primary duty was upon the state, and to that end it may collect the penalty of the bond for the protection of citizens of the state and for that of creditors and claimants. And it discharged this duty by calling upon the surety to elect and act under its contract as to that subject-matter and liability as to the fund and prosecution of the work to completion of the contract. This being complied with by the surety, under the statute (section 139730) (e), Code), suit by a creditor (for all creditors intervening) on the bond of the surety "shall not be commenced until after the complete performance of said contract and *final settlement thereof*" with the state, and if recovery on the bond at the instance of creditors be "inadequate to pay the amounts found to be due to all of said creditors," it is required that "judgment shall be given to *each creditor pro rata of the amount of the recovery.*" (Italics supplied.) It is thus noted that the right of action by a creditor did not lie until after completion of performance of the contract, and not before "final settlement thereof" with the state within the time indicated by statute, and the claim is subject to proration.

The further observations of Mr. Justice Hughes of the federal statute, in Illinois Surety Co. v. United States, 240 U. S. 214, 219, 226, 36 S. Ct. 321, 325, 60 L. Ed. 609, are to the effect:

"If the United States brings the action, the persons described are entitled to be made parties, and 'to have their rights and claims adjudicated in such action, and judgment rendered thereon.' If the United States does not sue within the time specified, they may bring action on the bond in the name of the United States, and 'prosecute the same to final judgment and execution.' Any creditor who duly presents his claim in such an action becomes a party thereto with a distinct cause of action. Title Guaranty & T. Co. v. Crane Co., 219 U. S. 24, 35, 55 L. Ed. 72, 77, 31 S. Ct. 140. The obligation of the surety thus enforced in a single action is a legal obligation to the United States for the use and benefit of the several claimants. We do not regard the requirements that 'the claim and judgment of the United States' shall have priority, and that the aggregate recovery shall not exceed the penalty on the bond, as insuperable obstacles to proceeding at law. It is the case of an undertaking for the payment of many claims, not to exceed the specified penalty. If the total amount due exceeds the penalty of the bond, it is provided that 'judgment shall be given to each creditor pro rata of the amount' of the recovery.' This, however, merely requires an arithmetical calculation after the different causes of action have been passed upon, and the amount due upon each determined. * * *

"It should be added that a different situation would arise if the surety, availing itself of the statutory privilege, should pay into court the full amount of its liability, to wit, the penalty on the bond, for distribution. In that case the legal obligation of the surety would be discharged by the express terms of the statute, and the proceeding would be simply for the distribution of a fund in court."

We may advert to the case of United States F. & G. Co. v. United States Use of Struthers Wells Co., 209 U. S. 308, 315, 28 S. Ct. 537, 540, 52 L. Ed. 806, 808, containing the following statement: "It would follow necessarily that, if the full amount of the liability of the surety on the bond were insufficient to pay all the claims and demands, the provision that, after paying the full amount due the United States, the remainder only should be distributed pro rata among the interveners, would also be a substantive amendment, and not one of procedure. Hence counsel admits that the full amount which may be due the United States depends upon whether the bond was executed prior or subsequent to the amendment of the statute; that, if the bond were executed prior thereto, the government is only entitled to its pro rata share, while, if executed subsequently, the full amount of its claim, regardless of the claims of the other creditors, would be the amount due. In other words, these provisions, contained in the single section of the act, are to be considered as prospective only, and as applicable to bonds executed subsequently to the passage of the amendment."

And the statute thus construed was:

"Chapter .778, 33 Stat. at L. p. 811, U. S. Comp. Stat. Supp. 1907, p. 709 [40 USCA § 270]:

" 'Be it enacted, etc., That the act entitled "An Act for the Protection of Persons Furnishing Materials and Labor for the Construc-

tion of Public Works," approved August thirteenth, eighteen hundred and ninety-four, is hereby amended so as to read as follows:

" ' "That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building, or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prose-cution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action, and judgment rendered thereon, *subject, however, to the priority of the claim and judgment of the United States.* If the full amount of the *liability of the surety on said* bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, *the remainder shall be distributed pro rata* among said interveners. * * * And provided further, That where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. *If the recovery on the bond should be inadequate to pay the amounts found due* to all of said creditors, judgment shall be given to each creditor *pro rata* of the amount of the recovery." ' " (Italics supplied.)

Does it follow, then, that the contention of appellant be correct—that (a) the cost of completion of the public work should be paid and allowed in full, as the case may be, upon or in reduction of liability under the bond; (b) that if there is a net difference between such completed construction work and cost, and the penalty of the bond increased by *any amount* received from the state in said completed construction, are the sums available for payment or proration of claims unpaid by the contractor?

Adverting to the facts of this case the original contract by Marble City Construction Company for that work was for $4,557.50, for which bond was made by appellant, and such was the limitation of its moneyed penalty. After default declared by the state, and call upon the surety to take over and proceed with the work per the contract, the latter employed Harbart Engineering Company to complete the same, for the necessary and reasonable price for that work of $4,519.40, and which was duly paid by the surety. The state of Alabama had theretofore paid the original contractor to such estimate the sum of $2,558.25, for part and satisfactory completion of the contract, and retained 15 per cent. of the amount then due, viz., $387.74. Thereafter the state made payment to appellant of the sum of $2,413.03, which embraced the sum of $387.74. Appellant accompanied its plea with the payment into court of said sum of $2,451.-05. It is urged that this sum was the alleged amount of the penalty of the bond, $4,557.50, plus the amount paid it by the state to sureties and contractors of $2,413.03, which included the original contractor's deduction of $387.74 and aggregated the sum of $6,970.53. And from the last-indicated sum the necessary and reasonable price of the completion of the work by the surety was deducted in the sum of $4,519.49, leaving in the surety's possession (it is alleged) as available and proratable among claimants the sum of $2,451.04, which sum of money was paid into court on filing its plea. The net cost to the surety to complete the work being $2,494.20, was the amount paid of $4,519.49 less the amount paid by the state of $2,025.29? If this be a claim, with other claims adjudicated, the aggregate amount to be prorated would be $7,503.31.

Upon the theory that the surety company's *primary obligation was to the state for completion of the contract,* and if the state's claim was paramount and superior, the judgment should have been (under this view) for 49 per cent. of the plaintiff's and other claimants' sums due. Hence the quære by the learned counsel for appellant of the theories advanced as the solution:

"The amount available to pay claims of $4,-945.24 is approximately 66% of the total claims thus calculated of $7,503.31. Therefore, the total payments in favor of the plaintiffs should have been $3,306.01." (Under this theory we interpolate).

"The whole question to be decided in this case is:

"How shall the item of $2,494.20, being the net cost to the Surety Company of completing the project, be handled?

"1. Is it an obligation to the State that had to be met in all events?

"2. Is it to be considered as just one more claim against the penalty of the bond along with the claims of the plaintiffs?"

We have set out the federal statute above (chapter 778, 33 Stat. p. 811, U. S. Comp. Stat. Supp. 1907, p. 709 [40 USCA § 270]), and it contained the express provision, "subject, however, to the priority of the claim and judgment of the United States," and provision for proration, "after paying the full

amount due the United States," the "remainder shall be distributed pro rata among said interveners." The Alabama statute says a creditor's suit on the bond "shall not be commenced until after the complete performance of said contract and final settlement thereof"; that only one action may be brought, and any creditor may file his claim, and, if "recovery on the bond should be inadequate to pay the amounts found to be due * * * judgment shall be given to each creditor pro rata of the amount of the recovery." See U. S. Comp. Stat. § 6923 (40 USCA § 270).

Thus the priority of claims of the United States is expressly preserved in the foregoing statute (or act of Congress of 1905 [Mankin v. U. S. to Use of Ludowici-Celadon Co., 215 U. S. 533–540, 30 S. Ct. 174, 54 L. Ed. 315] amending the act of 1894), and there is no *express provision* for priority of the state's claim contained in the Alabama statute, section 1397, Code. Is such priority of the state's claim over that of individuals necessarily implied under the statutes and suretyships thereunder liberally construed to the end in view and results to be protected against or evils prevented? Young v. American Bonding Co., 228 Pa. 378, 77 A. 623; United States v. Lynch (D. C.) 192 F. 364, 369. We have indicated that under the old statute of the United States, before the amendment of 1905, it was held that there was no priority of the United States' claim. United States v. American Surety Co. (C. C. A.) 135 F. 78; United States v. Heaton (C. C. A.) 128 F. 414. See, also, United States v. Rundle (C. C. A.) 100 F. 400; Griffith v. Rundle, 23 Wash. 453, 63 P. 199, 55 L. R. A. 381; Klein v. Collins, 159 La. 704, 106 So. 120.

And it is the federal rule (United States Fid. & G. Co. v. United States, 209 U. S. 308, 28 S. Ct. 537, 52 L. Ed. 804, 808) that, if the bond was executed prior to the Act of February 24, 1905, 40 USCA § 270 (expressly giving the United States priority), *the government would only be entitled to join in the proration and share with other creditors;* and, if after the amendment giving the priority the amount of the government's claim, would by reason of the superior right be paid in full to the exclusion of claims of other creditors. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 96 F. 25; United States v. Heaton, 128 F. 414, 63 C. C. A. 156. We hold there is no priority under the state statute that is expressed or necessarily implied.

It follows that the item of net cost to the surety company for completing the project be considered as merely "one more claim against the penalty of the bond," along with the claims of plaintiff and other interveners.

■ We may further say of the items of interest that the respective allowed claims draw interest at least from the time the suit is brought or intervention is made on the penal bond; this is the rule declared by the federal court. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, 1212. In this state, as to undisputed and liquidated claims, when the principal sum is due and payable. Union Indemnity Co. v. State, for Use of Beasley, 221 Ala. 1, 127 So. 204.

Questions of use, maintenance, rent, lease, and repairs of machines necessary, used and consumed in such construction work, and for work, labor, and material, were discussed in State for Use of Wadsworth v. Southern Surety Co., 221 Ala. 113, 127 So. 805, 70 A. L. R. 296; Union Indemnity Co. v. State for Use of Armstrong, 218 Ala. 132, 118 So. 148.

And we are of opinion that all claims, including the excess and net cost to the surety company, should be prorated. The case was not tried on the basis of such proration of all claims, including the net excess cost or claim of appellant, and all of the causes are reversed and remanded at the cost of appellees. We find no other reversible error.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.