# Dimmick *v.* Register.

*Bill in Equity by Creditors, against Assignees of Insolvent Debtor, for Account and Distribution.*

1. *'Assignment or sale by insolvent corporation; remedies of creditors, at law and in equity.*—On an assignment or sale by an insolvent corporation of all its property and effects, in consideration of the assignees' (or purchasers') undertaking to pay the outstanding debts, not to exceed a specified amount, the several creditors may maintain actions at law against the assignees (or purchasers), if the aggregate amount of the debts does not exceed the sum specified, or, if it does, may join in a bill in equity for an account and distribution; and their rights, in either event, are not affected by any subsequent agreement or dealings between the assignor and assignees.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. JOHN A. FOSTER.
The bill in this case was filed by the appellees, as creditors of the Montgomery Iron Works Company, against the appellants, Dimick, Chambers and Baldwin, as transferees of the Montgomery Iron Works Company, and prayed that a reference be had to the register in order to ascertain the amount of the indebtedness of the said Montgomery Iron Works Co., and that they be paid by the register their proportionate share of the amount agreed to be paid by the respondents. The defendants demurred to the bill, and moved to dismiss it for want of equity; but the Chancellor overruled both the demurrer and the motion: and on final hearing, held the complainants entitled to the relief prayed, and ordered a reference to the register. The other facts are sufficiently stated in the opinion. The defendants appeal, and assign the decree of the chancellor as error.

TOMPKINS & TROY, for appellants.

ARRINGTON & GRAHAM, *contra*, cited *Henry v. Murphy*, 54 Ala. 246; *Vincent v. Rogers*, 30 Ala. 471; same, 33 Ala. 204; *Avery v. Ware*, 58 Ala. 475; *Benning v. Nelson*, 23 Ala. 801; 1 Brick. Dig. p. 129.

STONE, C. J.—This case hinges on the written agreement. of the parties, of which we give below all that we deem material to a proper understanding of its terms.    Dimick, Chambers and Baldwin purchased the property and effects of the Montgomery Iron Works Company, and in consideration thereof entered into the following stipulations :    "The said D., C. & B. binding and obligating themselves to assume all valid debts and liabilities of the Montgomery Iron Works Co. of every kind and description, and the said D. C. & B. hereby agree to bind themselves to organize a new company upon the basis of fifty thousand ($50,000) dollars capital stock, and to issue to said Wilkins and associates—(the persons making the sale)—stock to the amount of thirty-six hundred (3,600) dollars.  .  .  .  two thousand ($2,000) dollars, however, is hereby agreed shall be retained by said D., C. & B. to protect and secure them against any loss in the event the debts of the said Montgomery Iron Works Co. shall exceed the sum of twenty-three thousand five hundred ($23,500) dollars, the said D., C. & B. in no event to be liable for an amount in excess of twenty-three thousand five hundred ($23,500) dollars, unless they are willing to take the said two thousand ($2,000) dollars. of stock for such indebtedness as they may be called upon to pay in excess of twenty-three thousand five hundred ($23,500) dollars, said Wilkins and associates to have the option and privilege of paying off said excess of indebtedness by transferring and selling the certificates of two thousand dollars of stock. It is hereby further expressly agreed and understood that said D., C. & B. are to pay all the debts of the said Montgomery Iron Works Company, as shown by the books of the said Montgomery Iron Works Co., or which it may owe, not exceeding. twenty-three thousand five hundred dollars, and to make no defense against any of said debts that said Montgomery Iron Works. Co. had no power to contract them or defense not going to their merits, except as to the amount which may be due on them, without the consent of the said Wilkins, except the debt of the Westinghouse Machine Company upon which suit has been brought," &c.

It would seem there ought to be no difficulty in interpreting this contract.    The promise of Dimick, Chambers and Baldwin was contemporaneous with, and was part and parcel of the contract of purchase, by which they acquired the property and effects of the Montgomery Iron Works Company.    It was part of the consideration—the main part, it would seem—on which they became the owners of the property purchased.    It. was not a promise to pay Wilkins and associates a sum equal to twenty-three thousand five hundred dollars of the debts. It was not a promise to pay them any thing.   The promise was

to pay the debts of the company, not exceeding $23,500. True, the consideration moved from Wilkins and associates, but the promise was not to pay them. It was a promise the creditors could claim the benefit of, and on which they could maintain an action in their own names. The debt became *prima facie* a debt to them, and Wilkins and associates could maintain no action upon it, unless the creditors repudiated the substitution, or, the promise not being kept, coerced, or took steps to coerce payment from the original debtor. We discussed these questions so fully, both on reason and authority, in *Young v. Hawkins*, 74 Ala. 370, and *Coleman v. Hatcher*, 77 Ala. 217, that we deem it unnecessary to farther reproduce the argument. The promise enured to the benefit of the creditors, and, *prima facie*, they alone can claim payment, or sue for the breach of the agreement. See, also, *Huckabee v. May*, 14 Ala. 263; *Lockwood v. Nelson*, 16 Ala. 294. *Mason v. Hall*, 30 Ala. 599.

The contract, as we have shown, vesting in the creditors the right to demand, sue for and recover, in their own names, the several sums it secured to them, they alone had the power to renounce, surrender, or bargain away that right. Any arrangement made with Wilkins by Dimick, Chambers and Baldwin, by which the latter undertook to pay, or did pay the agreed sum—twenty-three thousand five hundred dollars—in a manner different from the terms of the original contract, did not and could not bind the creditors. Under the facts of this case, as agreed to, the complainants have shown a clear right to share in said fund, to the extent they are creditors of the Montgomery Iron Works Company, and Dimick, Chambers and Baldwin are liable therefor.—1 Amer. & Eng. Encyc. of Law, 871, n. 6.

Whether the complainants have a remedy in equity depends on the inquiry, whether or not the debts of the Iron Works Company exceeded twenty-three thousand five hundred dollars. If they did not, then each creditor had a plain and adequate remedy at law. If, on the other hand, the debts exceeded that sum, each could claim only his *pro rata* share, which would require an accounting that equity alone is competent to adjust properly. *Vincent v. Rogers*, 30 Ala. 471; *Same v. Same*, 33 Ala. 224; *Cummings v. National Bank*, 101 U. S. 153; *National Bank v. Commonwealth*, 9 Wall. 353. The bill avers that at the time of the execution of said agreement—July 27, 1886—the debts of the Montgomery Iron Works Company amounted to between twenty-seven and twenty-nine thousand dollars. The answer, which was filed without oath, first expresses a want of knowledge on this subject, neither admitting nor denying its truth, and calls for proof of it. In

the further progress of the answer, however, is this clause: "And further answering said bill, respondents aver that they were informed that said sum of twenty-three thousand five hundred dollars was sufficient to pay all the debts of said Iron Works Company, and they are informed and believe, and upon such information and belief charge and aver, that all of it was applied to the payment of the just and legal debts of said company."

From the agreed statement of facts, on which this case was tried in the Chancery Court, we make the following extracts: "That the Montgomery Iron Works Company was, on the 27th day of July, 1886, indebted to the several complainants, individually and firms, in some amount, and that said indebtedness remains unpaid, but the amount of such indebtedness is not admitted as alleged in said bill; but, if the court is of the opinion, upon the pleadings and this agreed state of facts, that complainants are entitled to relief, then it is to be referred to the register to take the testimony, and ascertain and report the exact amount due by said company to each of said complainants—individuals and firms. . . . . . That on the 12th day of July, 1886, and from that time and up to and including the 27th day of July, 1886, the said Montgomery Iron Works Company was indebted to the said bank—[First National Bank of Montgomery]—in the sum of $6,698.89 on account of money checked by said company from said bank, in excess of its deposits. . . . That a few days afterwards, and before the 26th day of August, 1886, the said Montgomery Iron Works Company conveyed to said defendants all its real and personal property, *choses* in action and patents, which were of great value, to-wit, over twenty thousand dollars. That between the said 27th day of July, 1886, and the 27th day of August, 1886, the said Montgomery Iron Works Company made no deposits with said bank, but drew checks on the same in payment of debts due by it to other persons, which increased its indebtedness thereto from $6,698.89 to the sum of $15,194.43. . . . . The defendants, through J. W. Dimick, drew their check in favor of such Iron Works Company, on said bank, for the sum of $23,500, and delivered the same to the said Wilkins as president as aforesaid. . . . That upon the delivery of said check to said Wilkins, he deposited the same with said bank, and said amount of twenty-three thousand five hundred dollars was placed to the credit on the books of said bank, of the Montgomery Iron Works Company, and the difference between the sum of $23,500 and the amount due to said bank—$15,194.43—was afterwards drawn out by said Montgomery Iron Works

[Dimmick v. Register.]

Company on checks by it in the regular course of business, and in payment of the debts of said Iron Works Company."

On July 27th, 1886, as we have shown, the Montgomery Iron Works Company sold and disposed of its entire effects of every kind, and thereby disabled itself to continue active operations.   The debts of the company, whenever spoken of, either in the agreement of purchase, the pleadings, or the agreed statement of facts, are the debts the company owed at the time of the sale.   It owed no other debts, for it could contract no others, save in the procurement of money with which to discharge existing liabilities.   The debt to the bank was increased only to the extent its funds were permitted to be used in payment of other debts of corresponding amounts.   Whatever debts the Iron Works Company paid with the $23,500 obtained from Dimick, Chambers and Baldwin, and also whatever debts of the company were left unpaid, were and are the debts the Iron Works Company owed on July 27th, 1886. Now, while there is no direct, specific, independent admission that those debts exceeded $23,500, the admissions in the answer of defendants and in the agreed statement of facts, properly interpreted, sufficiently establish this necessary ground for equitable interposition.   They admit that the entire $23,500 have been paid out and exhausted in the payment of debts of the Iron Works Company, and they admit that the company still owes debts to the several complainants which are unpaid. True, there is no admission that those debts amount to the several sums claimed in the bill, but the agreement was that it should be "referred to the register to take the testimony and ascertain and report the exact amount due by said company to each of said complainants—individuals and firms."   We hold this was an agreement to leave the question of the amount of the indebtedness in abeyance, until the coming in of the register's report.   It being thus shown that when the sale and purchase were effected—July 27, 1886—the debts of the Montgomery Iron Works Company exceeded $23,500, chancery alone could grant proper and adequate relief to the complainants.

The decree of the Chancellor is in all things affirmed.

CLOPTON, J., not sitting.