(117 So. 219)
**BANK OF LUVERNE v. ALABAMA BANK & TRUST CO. (3 Div. 811.)**

Supreme Court of Alabama.    March 22, 1928.
Rehearing Denied May 31, 1928.

**1. Assignments ⬅➡50(1)—Direction to pay bank retainage due on road project held equitable assignment.**

Direction sent by construction company to state highway department as follows: "Please pay Bank of Luverne * * * retainage * * * which is now due or may become due us on Project 93–B, Monroe county," *held* sufficient in equity as between parties to pass right to funds held by state highway department and due contractors for road work.

**2. Assignments ⬅➡87—Claim under equitable assignment of highway funds for amounts earned by construction company with money which assignee advanced held prior to claim under earlier assignment.**

Amount earned by construction company, under contract with state highway department, with aid of money advanced by bank for that particular purpose and on faith of promise that state funds due contractor should stand as security, passed under assignment by contractors and bank as assignee had prior claim on funds in question, as against one claiming under a prior assignment of which bank had no notice.

**3. Partnership ⬅➡181—Partner may not pay partnership earnings to individual creditors in advance of partnership creditors.**

Individual partner has no right to appropriate partnership earnings to the payment of his individual debts as against creditors of the partnership, unless other partners consent and payment can be made without impairing partnership creditors' rights.

**4. Partnership ⬅➡181—Creditor of partner, holding mortgage on partnership's road-building outfit, held not entitled to priority under assignment of state highway funds as against assignee loaning money to partnership.**

One holding mortgage on partnership's road-building outfit, as security for debt of one of partners, *held* not entitled to priority under assignment of funds in state highway department due partnership on its road construction contract, as against another holding subsequent assignment as security for moneys advanced partners for express purpose of enabling it to perform its contract.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Assignments ⊚═85—Bank making advancements to complete road contract held entitled to priority from state's reserve fund under assignment of highway funds, subject to advances previously made by another assignee (Code 1923, § 1329).**

Bank which financed construction company, thus enabling it to complete construction of federal aid highway and secure 15 per cent. reserve held by highway department, under Code 1923, § 1329, was entitled to receive under assignment of funds in state highway department reasonable value of work done and paid for by bank, such payments to be received from reserve fund and entitled to priority, subject to claim of another assignee for advancements previously made to enable original contractors to carry on work.

**6. Assignments ⊚═85—Bank loaning money to contractors was not entitled to priority under assignment of highway funds for advances not necessarily used in building road (Code 1923, § 1329).**

Bank loaning money to enable contractors to complete highway contract and receive final 15 per cent. of contract price withheld by Code 1923, § 1329, relating to federal aid projects, was not entitled to any priority under assignment of highway funds for excess of amount loaned over that which necessarily went to completion of road in interpleader's suit to determine priority under assignments.

**7. Assignments ⊚═85—Banks assigned moneys due road contractors as security received pro rata participation except as to advances made to insure performance of contract (Code 1923, § 1329).**

In interpleader's suit to determine respective claims of banks under assignments of claim to funds due contractors by state highway department, banks were entitled to pro rata participation in funds with respect to debts due from partnership, except as to advances made to enable performance and completion of contract, under Code, 1923, § 1329, relating to federal aid projects.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill of interpleader instituted by the Alabama Construction Company against the Alabama Bank & Trust Company and the Bank of Luverne, adverse claimants. From the decree, the Bank of Luverne appeals. Reversed and remanded.

Frank B. Bricken, of Luverne, and Powell & Hamilton, of Greenville, for appellant.

The order drawn by Alabama Construction Company on the Highway Department, directing payment to the Bank of Luverne of all retainage then due, or that might become due, was a valid assignment of the 15 per cent. reserved by the highway department. Dixie Lumber Co. v. Young, 203 Ala. 115, 82 So. 129; Ex parte Payne Lbr. Co., 205 Ala. 259, 87 So. 876; 5 C. J. 922. The consideration for said order was legal and sufficient. 6 R. C.

L. 652. Being a member of the construction company, Rawlinson was authorized to sign and execute in the name of said company the different orders, assignments, and instruments under which the Bank of Luverne claims. Hyrschfelder v. Keyser, 59 Ala. 338; Ala. C. M. Co. v. Brainard, 35 Ala. 476; P. & M. Bank v. Willis, 5 Ala. 770; Ellis v. Allen, Bush & West, 80 Ala. 518, 2 So. 676; Ullman v. Myrick & Bozeman, 93 Ala. 536, 8 So. 410. The right of the Alabama Bank & Trust Company to the funds in controversy was limited to the amounts due under the monthly estimates and did not cover any of the 15 per cent. retainage which was transferred to the Bank of Luverne. The right of the Alabama Bank to any funds was dependent upon the construction company's performance of the contract. The Luverne Bank paid for the completion of the road after default by the construction company, and thereby became entitled to all the moneys due by the state under the contract including the retainage.

Steiner, Crum & Weil and Horace Stringfellow, all of Montgomery, for appellee.

Transfers of choses in action are not required to be recorded, and they are valid without registration against subsequent purchasers without notice. The assignment may be oral or in writing. Code 1907, § 6870; Faulkner v. Jones & Leith, 12 Ala. 165; Hatchett v. Molton, 76 Ala. 410; Jones v. Lowery Banking Co., 104 Ala. 255, 16 So. 11; Venturi v. Silvio, 197 Ala. 607, 73 So. 45; Wells v. Cody, 112 Ala. 278, 20 So. 381; 5 C. J. 902; Cosmopolitan Ins. Co. v. Gingold, 3 Ala. App. 537, 57 So. 266. The order of August 28, 1922, was insufficient to operate as an assignment of the fund to the Bank of Luverne. Auerbach v. Pritchett, 58 Ala. 457. Even where an order is for an entire fund, it will not, standing alone, pass the equitable ownership thereto. Venturi v. Silvio, supra. An order for part of a particular fund will not constitute an equitable assignment thereof without some evidence of acceptance. One partner cannot pass the title to partnership property by appropriating it to the payment of his individual debts. Jones v. Nichols, 202 Ala. 233, 80 So. 71; Cannon v. Lindsey, 85 Ala. 198, 3 So. 676, 7 Am. St. Rep. 38.

SAYRE, J. In June, 1922, the Alabama Construction Company, a partnership composed of Rawlinson and another, entered into a contract with the Alabama highway department for the construction of 8.23 miles of road in Monroe county for which it was to be paid the sum of $34,399.40. The road was known as "Federal Aid Project 93-B." The statute (Code, § 1329) requires in such cases that "not more than 85 per cent. of the contract price * * * shall be paid in advance of the full completion and acceptance

of· the work." Payments were to be made each month according to the estimates made for the highway department by its engineer in·charge of the work. The construction company needed financial help, and so in the beginning it entered into an "arrangement" with the Alabama Bank & Trust Company by which the bank was to furnish money from time to time to carry on the work, taking as security the promissory notes of the construction company each of which contained a pledge of "estimates due F. A. P. 93–B." The work, financed in this way except in the item of $1,000 advanced by the Bank of Luverne in December, 1922, progressed until about April 1, 1923, when the construction company, evidently seeing that no profit would result to it, abandoned the work of construction. Prior to that time the state (the Alabama highway commission) had paid to the construction company on account of work done on the road the sum of $26,594.34, all of which except $3,209.68 went to the Alabama Bank. At that time the construction company was indebted to the Alabama Bank on account of money furnished for work on the road in the sum of $6,692.43. The road was then unfinished, and thereafter, in July, 1923, the Bank of Luverne, to which Rawlinson individually was largely indebted on account of money loaned on previous road contracts, with the assent and concurrence of the highway department and of Rawlinson, who was the controlling partner of the construction company, entered into a contract with Mims Bros. for the completion of the project. About that time the construction company executed to the Bank of Luverne an assignment of all funds due or to become due to it on account of the work on F. A. P.·93–B and released all claim to the fund in the hands of the highway department. Payments made to Mims Bros. by the Bank of Luverne aggregated $3,728.55. There remained in the hands of the highway department $7,290.71, of which $5,082.75 represented the 15 per cent. reserved against the completion and acceptance of the road. The parties to this cause, the Alabama Bank and the Bank of Luverne, not being agreed as to the proper disposition of the fund in the hands of the highway department, the construction company, by Rawlinson, filed an interpleader, at the same time paying the sum of $7,290.71 into the registry of the court, and now, the Alabama Bank and the Bank of Luverne having propounded their respective claims, the question is, How, in equity, should the fund be distributed between them?

Much is said in the briefs concerning the assignability of the claims against the fund in the. hands of the highway department. This discussion is provoked by the various assignments heretofore mentioned and the fact that on August 28, 1922, after work on the road under the arrangement between the construction company and the Alabama Bank had·been in progress for some weeks, the construction company sent to the state highway engineer (state highway department) the following :

"Please pay the Bank of Luverne, Luverne, Ala., retainage [meaning the 15 per cent. retained] which is now due or may become due us on Project 93–B, Monroe county. [Signed] Alabama Construction Company, by L. C. Rawlinson."

[1, 2] But, in our opinion, the discussion of the assignability of such claims, whether in whole or in part, and the order of precedence among the assignees of such claims as affected by the dates of the assignments should have little or nothing to do with result to be adjudged. It is enough for the purposes of this case to say that the several assignments shown by the record were, in equity, sufficient, as between the parties to them, to pass the right to the funds in question. Wells v. Cody, 112 Ala. 278, 20 So. 381. It is of no consequence whether the several assignments in question undertook to pass the right to an entire fund or a part only, since the rule against partial assignments is made for the protection of the debtor in whose hands the fund may be. The state highway department gave no attention to these assignments; its payments out of the fund set apart for the road contract, F. A. P. 93–B, were made directly to the construction company so long as that company continued to earn them by work upon the road. The balance of the sum provided by the contract remained in the hands of the department until the road was completed and ·accepted, after which, as we have shown, the balance remaining in the hands of the department was paid into court through Rawlinson, thus relieving the department of all concern about the application of the fund. As for the matter of precedence as affected by the dates of the several assignments, it seems to us that, on obvious grounds of equity, the amounts earned by the construction company, with the aid of money advanced by the Alabama Bank for that purpose and on the faith of the promise that they should stand as security for such money, should, so far as definitely separable, be so applied in repayment of the money advanced by the Alabama Bank, and, certainly, the fact—as we find the case to be—that the Alabama Bank put out its money without knowledge or notice that the Bank of Luverne claimed under a prior assignment of the fund from which the earnings came ought not to affect adversely the claim of the Alabama Bank under its equitable assignment. The application of this principle to the facts in evidence would assign to the Alabama Bank without abatement on any account the sum of $2,207.96, the amount, apart from the retainage, so-called, due to the construction company for work done by it.

[3, 4] The Bank of Luverne contends that

it contributed to the earning of the whole amount paid to the construction company by reason that at the beginning of the work it held and owned a past-due mortgage on the construction company's road-building outfit, viz., teams, road scrapers, trucks, etc., without which the construction company could not have undertaken to build the road, and its agreement to let Rawlinson have the use of the outfit contributed as materially to the earning of the amounts paid by the highway department to the construction company and the money in controversy as did the money borrowed from the Alabama Bank. Among the obstacles standing in the way of the allowance of this contention with any definite effect are these: The debt which the Bank of Luverne sought in this way to find security for was the individual debt of Rawlinson, not the debt of the construction company, and, as against the Alabama Bank, a creditor of the company, a partnership, as above stated, the individual partner had not the right to appropriate the partnership earnings to the payment of his individual debt without the consent of the other partners, and not then if the effect was to leave partnership creditors unpaid (Jones v. Nichols, 202 Ala. 233, 80 So. 71; Cannon v. Lindsey, 85 Ala. 198, 3 So. 676, 7 Am. St. Rep. 38); the other active partner in the construction company also contributed a road-building outfit of like character of which no account is taken; the record affords no means of ascertaining either the absolute or relative value of the Bank of Luverne's contribution of this sort; and, again, the Alabama Bank contributed its money without knowledge or notice of the contribution by the Bank of Luverne, i. e., its forbearance to foreclose its mortgage and withdraw possession of the outfit.

[5, 6] True, on the other hand, the Alabama Bank contributed to the earning of the 15 per cent. held in reserve by the highway department; but that amount, in order to be available in payment of the cost of the road, needed to be earned again and was in fact again earned by the Bank of Luverne—this, because the statute law and the contract between the state and the construction company so provided. In the next place therefore, that is, after payment to the Alabama Bank of the sum of $2,207.96 as above stated, the necessary and reasonable cost of completing the road after its abandonment by the construction company should be paid without abatement out of the sum in reserve. We think the evidence fairly establishes the amount of this cost at $3,728.-55, less some items to be noticed hereafter. Rawlinson, testifying for the Alabama Bank and apparently with a strong bias in favor of that bank, deposes that the reasonable value of the work done by Mims Bros. and paid for by the Bank of Luverne, was something less than $1,000. Two of his employés give their approval to his estimate, as does another witness who passed over the road in its incomplete stage, casually, it seems, and without having in mind the question of value now at issue. But we are unable to find in the record any indication of unfair dealing or lack of candor in the matter of the advance of money by the Bank of Luverne for the purpose of completing the road. The evidence is that it paid out the sum of $3,728.55 according to its contract with Mims Bros. The amounts thus paid were paid on estimates approved by the highway department's engineer in immediate charge of operations. The Mims Bros. and Kyser, who knew the business of road building, testify that the amounts charged were reasonable. Rawlinson was present at the negotiation between the bank and Mims Bros. which resulted in the contract for the completion of the road, and, although it may be inferred that he had an intimate knowledge of the situation, on that occasion and notwithstanding the execution of the contract would necessarily affect his interest by reason of its effect upon the fund in reserve out of which his creditor, the Alabama Bank, was to be paid, he at that time expressed no dissent. The offer of Mims Bros., which they were solicited to make, was thought to be high for work of that sort on an original contract, but reasonable nevertheless in view of all the circumstances, Mims Bros. being the only road contractors near at hand and the job in a patchy and disheveled state. The estimates on which, after approval by the resident engineer in the employment of the highway department, payments were made by the Bank of Luverne, except in the respects to be noted, are, so far as we are able to see, regular and reasonable. However, in the estimates approved by the engineer for the last few days of the work, there appear charges for the use of road machines which are not to be justified as other charges for work of the same sort, rendered at an earlier day, go to show, and common knowledge of the value of mules and related things is persuasive to the same conclusion. There is no proof of collusion or deceitful purpose on the part of the Bank of Luverne in making these payments. They were probably made in the routine of business and without examination. But, having the notion, as the bank evidently did have, that any balance left in the reserve fund after the completion of the road would belong to it, there is no reason for holding that it intended to swell the amount of the bill for completion of the road for the benefit of Mims Bros. Nevertheless, the bank is legally responsible for the excess in the items in question, for every dollar paid to Mims Bros. went to decrease the interest of the Alabama Bank in the fund reserved by the highway department, and the fund in which the last-named bank had an interest cannot equitably be depleted by these charges. The conclusion is that these items, amounting to $322.50 in excess of what appears to be rea-

sonable, should be deducted from the amount of $3,728.55 heretofore noted as the amount due to the Bank of Luverne on account of its payments to Mims Bros., leaving $1,676.70 of the reserve fund to be apportioned between the parties to this cause according to the principles of equity.

[7] The amounts still due to the parties from the construction company, represented in this cause by the fund in the keeping of the court, on account of money advanced to that company, to wit, $1,000 due to the Bank of Luverne, and $4,469.30 due to the Alabama Bank, aggregating $5,469.30, are charges against the balance of the reserve fund, after payments heretofore indicated, as due without abatement, viz., $2,207.96 to the Alabama Bank, and $3,406.05 due to the Bank of Luverne, aggregating $5,614.01, which balance is $1,676.70, as above noted. As to the claims against this balance, it is not perceived that either of the parties is entitled to a preference. In such case equity proceeds by apportionment pro rata on the same principle on which it proceeds when decreeing contribution between debtors owing a common debt. National Surety Co. v. Graves, 211 Ala. 533, 101 So. 190; Dimmick v. Register, 92 Ala. 458, 9 So. 79. This means that $1,676.70 is to be divided between the Alabama Bank and the Bank of Luverne in the proportion of $4,469.30 and $1,000; that is, the Alabama Bank is to receive $1,371.47, the Bank of Luverne $305.23. The result is that the Alabama Bank gets $3,579.39, the Bank of Luverne $3,711.32, out of the amount deposited with the court, viz., $7,290.71. The trial court ordered that the last-mentioned sum, less $100, be let out to interest pending the final disposition of the cause. If interest has been earned, it will be assigned to each share as herein ascertained in due proportion. Against the share of the Alabama Bank the costs of this appeal and one-half the costs of the court below will be charged. Out of the share of the Bank of Luverne one-half the costs of the court below will be retained. The respective parties will be entitled to receive the balances thus ascertained. The decree will be reversed, and, in order that a decree be rendered in consonance with the conclusions before stated, the cause will be remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Applications for Rehearing.

Appellee's Application.

SAYRE, J. Appellee contends that the certificates of the resident engineer showing work done by Mims Bros. and contract value should not be considered in evidence. Notwithstanding the work had been abandoned by the construction company (Rawlinson), the state was interested in the completion of the project and in a proper application of the fund still in hand for that purpose, and had its engineer on the ground overlooking the work and certifying the results. Our judgment is that the certificates should be considered, not as conclusive, but as prima facie, evidence of the facts certified. These certificates are to be considered, not merely as the declarations of the engineer, but as contemporaneous verbal acts, belonging, not necessarily, indeed, but ordinarily and naturally, to the principal thing. "It is on this ground that this * * * class of entries is admitted, and therefore it can make no difference, as to their admissibility, whether the party who made them be living or dead, nor whether he was, or was not, interested in making them; his interest going only to affect the credibility or weight of the evidence when received." 1 Greenl. Ev. (16th Ed.) p. 844, § 120; 4 Jones, Ev. (2d Ed.) § 1700; Baucum v. George, 65 Ala. 267.

Appellant's Application.

Appellant suggests that the court has not allowed to it the value of the cement work done by Bonham under a separate contract with appellant. We have been unable to find in the record competent evidence of the value of this work; we are not allowed to speculate.

Applications overruled.