140 So. 755
**UNITED STATES FIDELITY & GUARANTY CO. et al. v. FIRST NAT. BANK OF LINCOLN.**
**3 Div. 970.**

Supreme Court of Alabama.
March 24, 1932.

Coleman, Coleman, Spain & Stewart, of Birmingham, and Rushton, Crenshaw & Rushton, of Montgomery, for appellants.

Goodwyn & Goodwyn, of Montgomery, amici curiæ.

Knox, Dixon, Sims & Dixon, of Talladega, and Steiner, Crum & Weil, of Montgomery, for appellee.

THOMAS, J.

The bill is for the enforcement of a lien or collateral pledge of "all moneys due or to become due" on the described public construction contract.

It has been declared by this court that under section 8935, Code, any lien may be enforced in equity. McLendon v. Truckee Land Co., 216 Ala. 589, 114 So. 3, an attorney's lien; Broglan v. City of Huntsville, 218 Ala. 9, 117 So. 419, an assessment lien; Wade v. Kay, 210 Ala. 122, 97 So. 129, an attorney's lien; Wilkins v. Folsom, 208 Ala. 24, 93 So. 547, enforcement of a tax lien; Rowe v. Bank of New Brockton, 207 Ala. 384, 92 So. 643, on shares of bank stock; Oden v. Vaughn, 204 Ala. 445, 85 So. 779, to compel transfer of corporate stock through pledge or mortgage thereof; Mathis v. Holman, 204 Ala. 373, 85 So. 710, a mechanic's lien; Wynn, as Adm'r v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228, for accounting and lien on corporate stock; Evans as Adm'r v. Silvey & Co., 144 Ala. 398, 42 So. 62, to enforce judgment lien; Bynum Merc. Co. v. First Nat. Bank of Anniston, 187 Ala. 281, 65 So. 815, lien of assignee of mortgage and lease; Pearce v. Brilliant Coal Co., 200 Ala. 630, 77 So. 4, by holder by purchase of equitable title to land; Henderson v. Steiner-Lobman Dry Goods Co., 202 Ala. 325, 80 So. 407, to marshal assets and securities under the statute before us as section 4829 of the Code of 1907, and appropriation of property or funds of the judgment debtor; Russell v. Thornton, 216 Ala. 60, 112 So. 347, a landlord's lien as affecting a mortgage lien; and Walls v. Skelton, 215 Ala. 357, 110 So. 813, landlord's lien on crops as touching a purchaser for notice with or without notice.

The foregoing cases will illustrate the application of the statute (section 8935, Code) to all kinds of liens and pledges of which courts of equity take cognizance, where such enforcement may be done without causing a conflict of jurisdictions of courts, which was the limitation in the substituted tax record cases. Wise v. State, 208 Ala. 58, 61, 93 So. 886.

The appellant Bosworth Smith & Co. (and partners doing business under that name) insist that the bill is without equity as to them, since no specific relief is sought against them other than the accounting sought as to said fund or moneys in payment of their note. The averments of the bill are that the assignment of all moneys due or to become due on that Shelby county contract was made to secure the indebtedness evidenced by the note; and reciting that it was "pledged as collateral securing payment of this note," which was made an exhibit to the bill. The assignment not being an absolute one, but a collateral pledge, appellant Bosworth Smith Company has such an interest in the subject-matter and accounting sought as required it to be made a party. There was no misjoinder by making this contractor a party. Broughton v. Mitchell, 64 Ala. 210; Plowman & McLean v. Riddle, 14 Ala. 169, 48 Am. Dec. 92; Hodge v. Joy, 207 Ala. 198, 204, 92 So. 171; Lawson v. Alabama Warehouse Co., 73 Ala. 289; Allgood v. Bank of Piedmont, 130 Ala. 237, 29 So. 855; Town of Carbon Hill v. Marks, 204 Ala. 622, 86 So. 903; Lebeck v. Bank of Fort Payne, 115 Ala. 447, 22 So. 75, 67 Am. St. Rep. 51; New York Indemnity Co. v. Nivens, 222 Ala. 562, 133 So. 261; 5 C. J. pp. 1003–5.

It will be necessary that the material averments of the bill be stated under its several aspects. City of Birmingham v. Louisville & N. R. Co., 216 Ala. 178, 185, 112 So. 742. It is alleged, in substance, that appellant Bosworth Smith Company, on May 22, 1929, entered into a contract with the state of Alabama for the construction of certain bridges in Shelby county, known as project No. S–330–331–A and 376, and for the faithful performance of this contract for construction work they executed a bond with appellant United States Fidelity & Guaranty Company, as surety. This bond is made an exhibit to the bill, and contains, among other things, the provision that "The said principals and sureties agree as part of this obligation that such contractor shall promptly make payment to all persons supplying him or them with labor, material, feed stuffs or supplies, in the execution of the work provided for in such contract, as provided for in section 28 of the Act of the Legislature approved August 23, 1927, and designated as 'The Alabama Highway Code.'" See General Acts 1927, pp. 348, 356; State, for Use of Wadsworth v. Southern Surety Co., 221 Ala. 113, 127 So. 805, 70 A. L. R. 296; Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876.

Bosworth Smith Company undertook the construction work and, during its performance, appellee advanced to it funds amounting to, to wit, $3,000, for the averred purpose and with the understanding that the funds so advanced would be used in the payment of labor, material, feed stuffs or supplies in the execution of the work, and the funds so advanced were so accordingly used. See case of Sherrill Oil Co. v. Taylor, 223 Ala. 457, 137 So. 295; United States F. & G. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622.

To evidence the indebtedness for the money so advanced, and to secure its payment, appellant Bosworth Smith Company executed its promissory note in favor of appellee and transferred and assigned, "deposited and pledged as collateral security for the payment of this note or any other liability or liabilities of the undersigned to the owner thereof, * * * all monies due or to be-

come due on the contract." A copy of the note and assignment is made an exhibit to the bill, and the exhibits and averments of the bill will be taken together, as one aids the other. Grimsley v. First Avenue Coal & Lumber Co., 217 Ala. 159, 115 So. 90.

It is further averred that the contract was performed by Bosworth Smith Company and settlement was made with the state highway department, and a balance of $7,756.03, then unpaid and due the contractor on the contract, was paid for the contractor by the state to appellant United States Fidelity & Guaranty Company, as surety on the construction bond. The bill further avers that appellant United States Fidelity & Guaranty Company had due notice of the assignment of the funds so made by Bosworth Smith Company to appellee of "the moneys due, or to become due, to them, under or by virtue of said contract, shortly after the said assignment was made, and long before it, the said defendant, United States Fidelity & Guaranty Company, received said funds, and complainant is entitled to have its said assignment enforced in this Honorable Court, and the said United States Fidelity & Guaranty Company to account to it for the funds so received by it from said State Highway Department to the extent of the indebtedness due and owing complainant as aforesaid;" that "in and by the provisions of the said note or instrument in writing, of which Exhibit 'B' is a copy, the said defendants Bosworth Smith Company expressly agreed to pay all costs of collecting or securing, or attempting to collect or secure said note, including a reasonable attorney's fee, whether the same be collected or secured by suit or otherwise. And complainant avers that it is entitled to be allowed out of the fund so assigned by the said Bosworth Smith Company to it, a reasonable attorney's fee for the services of its attorneys in the premises."

It is likewise averred in the alternative that at or about the time appellant Bosworth Smith Company was engaged in the performance of the contract for the construction of the bridges it was also under contract with the state of Alabama for the construction of a bridge across the Coosa river at Wetumpka, Elmore county, and for the faithful performance of this separate contract had executed a separate bond with appellant United States Fidelity & Guaranty Company; that appellant Bosworth Smith Company was financially unable to perform the contract for the construction of the bridge at Wetumpka, and appellant surety company took over and completed the contract, and in doing so sustained a loss; that the contract for the construction of the bridges in Shelby county was profitable to appellant contractor and beneficial to the surety company, and sufficient funds were realized therefrom to pay for all of the supplies furnished to the said contractor and the debts and obligations created, leaving a profit to Bosworth Smith Company, had the funds realized from the performance of the contract been so used or applied.

It is further averred that appellant United States Fidelity & Guaranty Company "caused, procured or induced the said contractors to use a large amount of the funds" so realized from the performance of the contract to erect the Shelby county bridges, to wit, in excess of $3,000, "towards the expenses incident to the construction" of the bridge at Wetumpka called "Bibb Graves Bridge," thereby diverting these funds to relieve the surety company from, or to minimize its losses on account of its suretyship on the separate bond and contract given for the construction of the Wetumpka bridge, "thereby diverting the funds arising from the construction of the Shelby County bridges from the purposes intended, in order to relieve the defendant surety company from or minimize its losses, to the detriment and loss of complainant as aforesaid, and this notwithstanding the said surety company had notice of the assignment to complainant of the funds arising from the Shelby County contract aforesaid, and of the contract and obligation of the said contractors to pay for all labor, material and supplies furnished to them in the construction of the said Shelby County bridges, and of the further fact that the said surety company had notice that the said Bosworth Smith Company and the individuals composing that firm were insolvent or financially unable to pay for said labor, supplies, etc., except out of the proceeds arising from their said contract for the construction of the said Shelby County bridges. And complainant avers that if it is mistaken in its right to relief because of or on account of any of the matters and things hereinabove in this bill set forth, then it avers that it is entitled to have said defendants account in this Honorable Court to complainant to the extent of its demand for the funds arising or accruing under the contract for the construction of the Shelby County Bridges, and which were thus wrongfully diverted to the use and benefit of the said surety company, as herein alleged, and to the loss and damage of complainant as aforesaid."

The bill seeks to require appellant United States Fidelity & Guaranty Company, in the several aspects as follows, (1) to account for and pay over to appellee the fund received by it from the state highway department, or so much thereof from the Shelby county contract and work as is necessary to satisfy appellee's claim and pledge, with interest and attorney's fees, or (2) that appellant (United States Fidelity & Guaranty Company) be required to account to appellee for the funds arising out of the contract for the construction of the Shelby county bridges which were improperly applied and diverted by the act

and conduct of said United States Fidelity & Guaranty Company and the contractor to the prejudice of the rights and equities of complainant; or (3) that appellant (United States Fidelity & Guaranty Company) be made liable as surety on the bond for the amount advanced to appellant Bosworth Smith Company to pay for labor, supplies, etc., in the construction of the Shelby county projects.

The bill prays that notice be given by publication, as required by statute, to creditors having claims or demands for labor and supplies, etc., and contains a prayer for other or different relief.

Separate demurrers were filed by appellants, the contractor and surety. A decree was rendered overruling these demurrers; from that decree this appeal is taken.

The cases of Sherrill Oil Co. v. Taylor, 223 Ala. 457, 137 So. 295, and United States F. & G. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622, were for the enforcement of assigned liens or verbal pledges of labor and materials, claim tickets, written and verbal assignments thereof, that were enforced in Benson Hardware Co. v. Taylor (Ala. App.) 136 So. 863; [1] First Nat. Bank of Gadsden v. Murphree, 218 Ala. 221, 118 So. 404, on "only verbal" assignments. The assignment made by appellant Bosworth Smith Company to appellee recited that it was of "all monies due or to become due on Shelby County contract S-330-331-A and 376 with the State Highway Department of Alabama," and passed to appellee the right to the funds in question, enforceable in equity, as is sought by the bill and as declared in the recent case of Bank of Luverne v. Alabama Bank & Trust Co., 217 Ala. 635, 117 So. 219. There is also analogy in Sherrill Oil Co. v. Taylor, 223 Ala. 457, 137 So. 295.

In the case of Bank of Luverne v. Alabama Bank & Trust Co., supra, the holding was specifically that direction to pay the bank retainage due on the road project, held equitable assignment and sufficient between the parties to pass the right to the fund held by the highway department and due the contractor for road work. See Wells v. Cody, 112 Ala. 278, 20 So. 381; Lowery v. Peterson, 75 Ala. 109.

■ The money exceeding the amount of the pledge, held to be binding in a court of equity as between the parties, and alleged to have been paid to appellant surety company by the state highway department, represented the balance due on the contract for the construction of the Shelby county bridges, and is averred to have been earned by Bosworth Smith Company in·doing the construction work and on the faith of the promise of Bosworth Smith Company that the fund should stand as security for the money so advanced.

[1] 24 Ala. App. 480.

Applying the principles of Bank of Luverne v. Alabama Bank & Trust Co., 217 Ala. 635, 117 So. 219, appellee, with notice by appellants, is entitled in equity to the repayment out of the money so received from that contract by appellant surety company to the extent of a sum sufficient to pay appellee the amount advanced by it, with interest and attorney's fees, if its notice extended to such latter charge of liability. See Shows v. Jackson, 215 Ala. 256, 258, 110 So. 273; Coston-Riles Lumber Co. v. Alabama Mach. & Sup. Co., 209 Ala. 151, 95 So. 577; Sheffield Chamber of Commerce v. Hatch, 220 Ala. 601, 127 So. 173; People's Bank v. Mobile Towing & Wrecking Co., 210 Ala. 678, 99 So. 87, and Houston Canning Co. v. Virginia Can Co., 211 Ala. 232, 100 So. 104, 35 A. L. R. 912, for slight analogy as to the extent of notice.

Thus we are brought to a consideration of our recent cases of the proper application of installment payments on such construction contracts, or that of application of payments made on several of such construction contracts. Are they in point here?

In the recent case of United States Fid. & G. Co. v. Butcher, 223 Ala. 606, 137 So. 446, [3], it was declared that "When money is paid to a materialman in regular course of business without knowledge of its source, general laws of application of payments govern, and the surety on the school contractor's bond, when sued, cannot demand reapplication to demands secured by bond (Gen. Acts 1927, p. 37);" and that a materialman secured by a bond for material furnished to a particular job is not required to inquire the source of money so paid on or in discharge of his claim, received on the general account from the contractor. This was in payment of the superior lien.

In Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811, 814, it was declared: "With full knowledge of all the material facts, liabilities, and priorities out of which appellant's equities and superior rights arose, appellees could not take the assignment of the check from Clark and out of it reimburse themselves for loans made Clark to the prejudice of the public contract and the priority of the suretyship. An analogy of the right to such proceeds (such as are now the subject of controversy) is to be found in Fidelity & Dep. Co. v. Rainer, 220 Ala. 262, 125 So. 55." Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412.

It is contended for appellants that the averments of the bill affirmatively show that United States Fidelity & Guaranty Company has a paramount right of subrogation by virtue of its contractual relationship as surety on the bond. In Citizens' Bank of Guntersville v. Pearson, 217 Ala. 391, 116 So. 350, this court held that the surety of a road contractor (un-

der one contract) on completing the work after the contractor's default, and making large expenditures incident thereto, became entitled (by virtue of the initial provisions of the contract bond and general principles of law governing subrogation) to the money payable on completion of that work, as against a bank that had loaned money to the contractor and taken, as security, an order for the delivery to the bank of the monthly estimates for the work as it was done and due. The conclusion announced in Citizens' Bank of Guntersville v. Pearson, supra, is supported under the rule of subrogation by the decision cited from the Supreme Court of the United States in Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412.

In that case the surety was permitted to prevail because of the surety's right of subrogation arising out of its contractual relation on the bond given for the faithful performance of the construction contract and the duty of completion of the work and payment therefor.

In the case of Prairie State Nat. Bank v. United States, supra, and in Citizens' Bank v. Pearson, supra, the right of subrogation afforded to the surety was attributed to the fact that the surety completed the identical contract undertaken by the contractor, under guarantee of completion, and, in so doing, expended moneys sufficient to justify its reimbursement to the extent of the fund involved and required and expended in completion of that contract and in the discharge of its suretyship. In other words, the reasoning of the rule applied in Citizens' Bank v. Pearson and Prairie State Nat. Bank v. United States, was that a surety is entitled to invoke the doctrine (subrogation) for the purpose of preventing loss by reason of its required discharge and payment of "a superior lien or claim on the part of the person to whom he pays the debt", such were the claims and expenditures made in each case.

■ The contract of suretyship made it incumbent upon a surety on a bond given for the performance of a construction contract to complete the work undertaken to be performed; if the work is completed by the surety as required by the contract, as was done in the cases referred to, it entitles that surety to be subrogated to the rights of the person whose superior lien he discharges. Such was the reason or analogy employed in New York Indemnity Co. v. Niven, 222 Ala. 562, 566, 133 So. 261, and in Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811.

In the Prairie State Nat. Bank Case, supra, and New York Ind. Co. v. Niven, supra, as well as Citizens' Bank v. Pearson, supra, the work was abandoned by the contractor, and the surety performed the contract by completing the work in question (not some other

work under another contract and bond), and thereby became entitled to be subrogated to the superior right of the contractee (on such funds under that contract) to have the full contract price used for the performance of such contract. There was no right of subrogation declared as to funds from other contract work. That is to say, in the cases cited by appellants, in which the surety was allowed to prevail over an assignee or pledgee of a fund because of the surety's right to subrogation, the facts were: (1) Either that the surety had completed the work on its abandonment by the contractor; or (2) had expended moneys in discharging claims of laborers, materialmen, or others required by statute or within the provisions thereof, or the provisions of the bond and contract to be paid by the surety in execution of that contract and in discharge of superior rights and equities.

■ Such is the effect and limitation of the subrogation cases as to a superior equity, when the meaning of that doctrine is borne in mind. It is, generally speaking, a "mode which equity adopts to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it," and when the party invoking it comes into court with clean hands. Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566, approved in Bell v. Bell, 174 Ala. 446, 56 So. 926, 37 L. R. A. (N. S.) 1203. See, also, German Bank of Memphis v. United States, 148 U. S. 573, 13 S. Ct. 702, 37 L. Ed. 564; American Bonding Co. v. National Mechanics' Bank, 97 Md. 598, 55 A. 395, 99 Am. St. Rep. 466, 517; 37 Cyc. 390, 429. That is, the doctrine is inapplicable when in violation of law, not within the intention of the parties to the contract, or where it will defeat or impair a superior equity, as regards the securities, or funds or properties in question. New England Mortgage Security Co. v. Fry, 143 Ala. 637, 645, 42 So. 57, 111 Am. St. Rep. 62; 25 R. C. L. p. 1321, § 9; Alison v. Patrick, 217 Ala. 520, 116 So. 918; Gable v. Kinney, 219 Ala. 150, 154, 121 So. 511. The surety has no greater right by way of subrogation than the creditor or his principal has to the funds or property in question, for that the surety cannot be placed in more favorable position than his principal, and to preserve the relative standing of the liens to the property. Houston Ex'r v. Huntsville Branch Bank, 25 Ala. 250; American Bonding Co. of Baltimore v. Fourth Nat. Bank. of Montgomery, 205 Ala. 652, 88 So. 838; Colvin v. Owens, 22 Ala. 782, 795; Lyon v. Leavitt, 3 Ala. 430; Knighton v. Curry, 62 Ala. 404: White's Adm'r v. Life Ass'n of America, 63 Ala. 419, 35 Am. Rep. 45; Tarrant Land Co. v. Palmetto Fire Ins. Co., 220 Ala. 428, 125 So. 807; Shields v. Pepper, 218 Ala. 379, 118 So. 549; Gable v. Kinney, supra; 37 Cyc. 429; 25 R. C. L. p. 1321, § 9.

In the instant case the contract bond and suretyship was under the federal and state statutes, of like import, as was the case in Prairie State Nat. Bank v. United States and Bank of Luverne v. Ala. Bank & Trust Co., supra; hence the facts as alleged in the bill dintinguish this case from those relied on by appellants. That is to say, the bill in this case alleges a valid assignment of the moneys earned under the contract and knowledge thereof, the full performance of the contract undertaken by Bosworth Smith Company with the state, and a final settlement had thereafter with the state highway department, as a result of which the balance payable on the contract was paid over to appellant United States Fidelity & Guaranty Company with full notice or knowledge of complainant's claim and collateral pledge that was superior to respondent's.

It follows, from the averred facts of the bill, that it is shown affirmatively that appellant received the fund subject to superior equities therein, and is accountable therefor to any one establishing a prior right thereto.

Appellee's counsel concede that if it appears that the surety has a prior claim to all of or any part of the fund received by it, by reason of the fact that it had discharged claims given precedence by statute or by contract over the claim of appellee (New York Ind. Co. v. Niven, 222 Ala. 562, 133 So. 261; Citizens' Bank v. Pearson, 217 Ala. 391, 116 So. 350), the appellee will not be entitled to prevail to the extent of preferred claims and amounts. It follows from the foregoing, there was no reversible error in overruling demurrers to the bill, on that phase thereof.

■ We may add that it is not incumbent upon appellee to make allegations of facts not presumed to be within its knowledge, but peculiarly within the knowledge of appellants. The payments made in the performance of the contract, as well as the disposition of the fund received by the United States Fidelity & Guaranty Company, and what, if any, claims against the bond are still outstanding, are matters within appellants' knowledge, and are facts necessary to the determination of appellee's alleged equity to have its claim or lien enforced as sought by the bill.

■ The equity of the bill lies in the assertion of appellee's claim to the fund involved by virtue of its assignment and pledge, coupled with the allegations that this fund came into the hands of appellant, United States Fidelity & Guaranty Company, subject to appellee's superior equity under its pledge, and the accounting sought is the relief incident to the asserted equity. If appellants have a superior right to the fund by virtue of these subrogation cases or otherwise in equity and good conscience, it is a matter of defense. The bill cannot be successfully attacked for failing to affirmatively show such defense or the nature and extent of such superior equity or lien. The pleading is not to be tested alone by the usual classifications of a bill merely for accounting, unaffected by special equities as here averred, the pledge with notice thereof. Julian v. Woolbert, 202 Ala. 530, 81 So. 32.

■ It is further argued that by the sixth paragraph of the bill facts are alternatively alleged showing a diversion, at the instigation of United States Fidelity & Guaranty Company, of moneys received by the contractor from the construction of the Shelby county bridges to use in the construction of the "Bibb Graves Bridge" at Wetumpka, Ala.; that the construction of this latter bridge was undertaken by Bosworth Smith Company, with United States Fidelity & Guaranty Company on their construction bond as surety; that this bridge was in course of construction at the time the Shelby county bridges were being constructed; that Bosworth Smith Company became financially unable to complete the "Bibb Graves Bridge" and the work was taken over and done by United States Fidelity & Guaranty Company as surety; that a sufficient amount of money was realized by Bosworth Smith Company on their contract for the construction of the Shelby county bridges to pay the cost of the entire construction, and leave a profit to the contractor for the discharge of this assignment or pledge, if the funds realized from the work done on the Shelby county bridges had been duly applied in accordance with the contract and the statute, but a large amount of these funds, to wit, in excess of $3,000, was used (at the procurement or inducement of the United States Fidelity & Guaranty Company) by the contractor in the construction of the "Bibb Graves Bridge" to relieve the United States Fidelity & Guaranty Company from loss on that contract and bond, or to minimize its loss as surety on its bond for the construction of the "Bibb Graves Bridge." It is further averred that United States Fidelity & Guaranty Company had notice of the assignment to appellee of the funds arising from the Shelby county contract, and that it also had notice that Bosworth Smith Company, and the individuals composing that company, were insolvent or financially unable to pay for the labors, supplies, and materials used in the Shelby county bridges, except out of the proceeds arising from the performance of that contract.

The legal effect of the allegations of the last stated aspect of the bill is that United States Fidelity & Guaranty Company, with knowledge of the pledge and equity, is accountable to appellee to the extent of its claim for all money diverted by and with its consent or at its instigation, arising out of the

contract for the construction of the Shelby county bridges, over and above the amount necessary to discharge the claims protected by statute and the contract and bond. It is alleged that enough money was received from the work done under the contract for the construction of the Shelby county bridges to pay all claims protected by statute and to realize a profit to the contractor, and an accounting is sought in favor of appellee from appellant United States Fidelity & Guaranty Company for this excess, or to the extent of its superior equity.

The surety company's right to subrogation extends only so far as is necessary for its reimbursement of money paid by it in the performance of the identical contract and obligations undertaken on its bond given for the faithful performance of that contract (not some other), and in this case for the construction of the Shelby county bridges, and any funds in excess of that amount must, according to the averments of the bill, be applied to appellee's claim as assignee of the pledge. See analogy in Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811. That is to say, if it appears on an accounting that United States Fidelity & Guaranty Company has obtained the benefit of money arising out of the construction of the Shelby county bridges in discharging or minimizing its loss sustained as surety on the bond for the construction of the "Bibb Graves Bridge," and did this with knowledge of appellee's pledge and equity, then it will be held accountable therefor to appellee to the amount of the latter's lien or pledge. Lacy v. Maryland Casualty Co. (C. C. A.) 32 F.(2d) 48.

We may say in conclusion on the further question argued by counsel that, having taken section 28 of the Highway Code (Gen. Acts 1927, § 28, pp. 356, et seq.) from the federal statutes, it came to us with the constructions placed thereon by the federal courts. State, for Use of Wadsworth v. Southern Surety Co., 221 Ala. 113, 127 So. 805, 70 A. L. R. 296; United States Fidelity & Guaranty Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622. And the federal cases have not embraced "money loaned" within the purview of the bond statutes, as labor, material, feedstuffs and supplies. (Gen. Acts 1927, section 28 (b), p. 357; State, for Use of Wadsworth v. Southern Surety Co., supra); National Surety Co. v. Jackson County Bank (C. C. A.) 20 F.(2d) 644; Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321; Id. (C. C. A.) 150 F. 465; Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Illinois Surety Co. v. City of Galion (D. C.) 211 F. 161; United States, to Use of Fidelity Nat. Bank v. Rundle (C. C. A.) 107 F. 227, 52 L. R. A. 505; Southern Surety Co. v. J. R. Holden Land & Lumber Co. (C. C. A.) 14 F.

(2d) 411; Murchison Nat. Bank v. Clark, 192 N. C. 403, 135 S. E. 123. See the recent cases of Wachovia Bank & Trust Co. v. J. F. Mulligan Const. Co., 200 N. C. 304, 156 S. E. 491, and National Surety Co. v. American Sav. B. & T. Co., 101 Wash. 213, 172 P. 264. The general authorities on this phase of the question are in line with the decision in Citizens' Bank of Guntersville v. Pearson, supra; State, for Use of Wadsworth v. Southern Surety Co., 221 Ala. 113, 127 So. 805, 70 A. L. R. 296; United States Fidelity & Guaranty Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622, and the old case of The James Battle v. Waring, 39 Ala. 180.

It is true that the bond and contract fixed the liabilities of the parties for labor, material, feedstuffs and supplies, and within the contemplation of the parties; it did not contemplate money furnished in the sense of general loans. Union Indemnity Co. v. Handley, 220 Ala. 292, 124 So. 876; Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811, 813; Fulghum v. State, 94 Fla. 274, 114 So. 367; Oliver Const. Co. v. Crawford, 142 Miss. 490, 107 So. 877; Oliver Const. Co. v. Dancy, 137 Miss. 474, 102 So. 568; Watkins v. United States Fidelity & Guaranty Co., 138 Miss. 388, 103 So. 224; Lane v. E. J. Deas Co., 12 La. App. 382, 125 So. 514; Red River Valley Bank & Trust Co. v. Louisiana Petrolithic Const. Co., 142 La. 838, 77 So. 763; Bishop v. T. Ryan Construction Co., 106 Wash. 254, 180 P. 126. It is on this construction of the statute and conditions of the bond and contract that our subrogation cases are decided.

Such is not the case before us, but that of appellee's claim under its pledge and assignment of funds available for that payment of the debt sought to be thereby secured and that were subject to appellants' secondary and subordinate rights that arose from other relations. A court of equity will protect such superior right and equity in a case where the rule of subrogation to protect the surety has no application and does not affect such valid and equitable pledge. There is full accord in this decision with that in Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811; Bank of Luverne v. Alabama Bank & Trust Co., 217 Ala. 635, 117 So. 219; with Citizens' Bank of Guntersville v. Pearson, 217 Ala. 391, 116 So. 350; Prairie State Nat. Bank v. United States, 164 U. S. 227, 232, 17 S. Ct. 142, 41 L. Ed. 412, 416, and Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321.

The judgment of the circuit court is free from error in overruling the demurrers on either phase of the bill, and is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.